ALFRED NEILSON AND WILLIAM T. EVANS, EXECUTORS, PROSECUTORS, v. GEORGE E. RUSSELL, SURROGATE, AND J. WILLARD MORGAN, COMPTROLLER.

Submitted December 10, 1907—Decided February 24, 1908.

1. The tax imposed by the Collateral Inheritance Tax act of this state upon the passing of a decedent's property to strangers or collateral kindred is not a tax upon property, but an excise upon the devolution of property—in fine, is a succession tax.

2. Such succession tax attaches to all property in this state that comes within its category regardless of the place of residence of the late owner of such property.

3. For the purposes of this tax shares of stock in a corporation organized under the laws of this state are property within this state without regard to the place of residence of the stockholder, or the place of deposit of the certificates of stock, or the location of the property owned by the corporation or the place where its business is carried on.

4. Stock in a corporation regarded as the proprietary right that the stockholder has, in the anomalous species of incorporeal property that comes into existence under the laws of the state in which the corporation is organized, is itself property within such state in the sense that it has its abiding *situs* there for all matters appertaining to sovereignty among which is the levying of an impost upon the devolution of such proprietary right on the death of its owner.

5. Although stock in a New Jersey corporation is personal property, its *situs* for the purposes of legislation imposing a tax upon the right of succession thereto is to be determined by the inherent nature of such property and not by the legal fiction *mobilia personam sequuntur;* thus determined the *situs* of every share of stock in every company incorporated in this state is, with respect to such legislation within this state, without regard to the place of residence of its late owner or the place of deposit of the certificates of stock.

6. Shares of stock of a New Jersey corporation represented by certificates held by a non-resident at the time of his death at his domicile outside of this state, which pass by his will to persons not exempt by our law, are liable to the succession tax imposed by "An act to tax intestates' estates, gifts, legacies, devises and collateral inheritance in certain cases," approved May 15th, 1894. *Pamph. L., p.* 318.

On *certiorari.*

Philo Laos Mills, the testator, resided in England, and died there on the 23d day of August, 1905, leaving a last will and testament, which was duly admitted to probate in England on the 13th of November, 1905, and an exemplified copy thereof admitted to probate by the surrogate of Essex county, this state, and letters testamentary granted to William T. Evans, a resident of Montclair, this state, and Alfred Neilson, a resident of New York State, the two American executors named in said will, who qualified and took office. The testator had no real property in the State of New Jersey, but at the time of his death was the owner of, and had in his possession at his residence in England, the certificates of eight thousand eight hundred and eighty-nine shares of the common stock of Mills & Gibb, a corporation organized under the laws of this state, with its registered office in East Orange. The English executors, upon entering on their duties, took possession of these certificates of stock, and retained possession of them until March 1st, 1907, when they were sent by the English executors to the American executors, and were received by William T. Evans, the New Jersey executor, at his residence in Montclair. By the terms of the will of the testator, the income from the said shares of stock was bequeathed to the widow of the testator, Susan Neilson Mills, during her natural life, after the termination of which the income, and ultimately the shares of stock, are to go to nephews and nieces. The value of these shares has been appraised and assessed by the surrogate of Essex county under the provisions of our Inheritance Tax act. *Pamph. L.* 1894, *p.* 318.

No question is raised as to the manner of the assessment, but the first and second reasons assigned raise the question whether the shares of capital stock of a New Jersey corporation, represented by certificates held by a non-resident at the time of his death at his domicile outside of this state, and which are finally to pass to persons who are not exempt by our Collateral Inheritance Tax law, are liable to taxation under the first section thereof, which reads:

"That after the passage of this act all property which shall pass by will or by the intestate laws of this state from any person who may die seized or possessed of the same while being a resident of the State, and all property which shall be within this state, and any part of such property, and any interest therein or income therefrom, which shall be transferred by inheritance, distribution, bequest, devise, deed, grant, sale or gift aforesaid, made or intended to take effect in possession or enjoyment after the death of the intestate, testator, grantor or bargainor, to any person or persons, or to a body politic or corporate, excepting churches, hospitals and orphan asylums, public libraries, Bible and tract societies, and all religious, benevolent and charitable institutions and organizations, in trust or otherwise, or by reason whereof any person or body politic or corporate shall become beneficially entitled, in possession or expectancy, to such property, or to the income thereof, other than to or for the use of the father, mother, husband, wife, children, brother or sister, or lineal descendants born in lawful wedlock, or the wife or widow of a son, or the husband of a daughter, shall be subject to a tax of five dollars on every hundred dollars of the clear market value of such property, to be paid to the treasurer of the State of New Jersey, for the use of the state, and all administrators, executors and trustees shall be liable for any and all such taxes until the same shall have been paid as hereinafter directed; *provided,* that an estate which may be valued at a less sum than five hundred dollars shall not be subject to said duty or tax."

Before Justices GARRISON, REED and PARKER.

For the prosecutor, *Coult, Whiting & Smith* (*Frank R. Lawrence* and *Frank Lawrence* on the brief).

For the defendants, *Theodore Backes* and *Robert H. Mc-Carter,* attorney-general.

The opinion of the court was delivered by

GARRISON, J.   On March 23d, 1892, the legislature of this state enacted a law imposing an *ad valorem* tax of five per cent. upon "all property which shall be within this state, and any part of such property and any interest therein," that shall be transferred upon intestacy or by testamentary disposition to any person or persons other than those named in the act. This act, modified as to its title so as to include devises, was re-enacted on May 15th, 1894, and is the law applicable to the present case, where the question is whether stock in a New Jersey corporation passing by the will of a non-resident decedent to collateral relatives is liable to the tax imposed by this statute.

The prosecutor contends, in the first place, that this statute does not apply to the personal property of a non-resident decedent.

Inasmuch as the statute does not purport to tax the owner of property while he is living, and cannot tax him after he is dead, the sole significance of his place of residence is the bearing it has upon the question whether the property he owned while living is, in legal contemplation, "within this state" at the time of its transference to other owners after his death. The statute itself, before proceeding by the language just quoted to subject all property within this state to the impost in question, by a special clause laid a like impost upon "all property which shall pass by will, or by the intestate laws of this state, from any person who may die seized or possessed of the same while being a resident of this state."   The force of this specific provision is twofold—*first,* to impress the property of residents of this state with the provisions of our intestate laws, and *secondly,* to render clear the next succeeding clause, which, by reason of its omission of any reference to

residents of this state, imposed a succession tax that was general both in scope and character.

The plain import of the words "and all property which shall be within this state" renders their construction unnecessary. Interpretation alone suffices. If, however, recourse be had to construction, its two most familiar canons constrain us to give to the words of the statute their clear and unambiguous meaning, and also to give weight to the consideration that when the legislature in the preceding clause intended to limit its provision to residents of this state it knew how to do so by apt words, and that it would be contrary to all rules to impute to the legislature in the framing of the next succeeding clause a meaningless repetition, and also a sudden loss of the ability to employ, with a proper sense of their force and meaning, words that in the immediate context it had aptly and efficiently employed. On the contrary, we must deem that the omission of "residents of this state" from the general clause as to "all property" was advisedly made, and must conclude that when the legislature intended to impose a limitation as to residence it knew how to express it, and that when it failed to express it it did not intend to impose it.

Another consideration leading to the same result arises from the circumstance that our statute is practically the counterpart of the New York Collateral Inheritance act of 1885, which, because of certain language contained in it, was held by the Court of Appeals of that state to impose no liability upon property within that state that passed from a non-resident decedent. The significance of this circumstance lies in the fact that the language of the New York statute upon which the judicial decision in question was based was entirely eliminated from our statute enacted two years after the rendition of such decision, although in all other respects our statute was the counterpart of its New York model. The features of the New York statute that led to the judicial construction referred to were, first, the use of the words *"or which* property shall be within this state," which the court held to be "the same property mentioned in the prior part of the section," and hence that it "had reference only to property

owned by a resident of the state." In the place of these words, "or which property," on which this construction had been based, our statute substituted the words "and all property," to which the construction in question cannot possibly apply.

The other feature of the New York statute considered by the court in the *Matter of Euston,* 113 *N. Y.* 174, which is the case referred to, was that the property mentioned in the clause it was construing was subjected to a succession tax only when "transferred by deed, grant, sale or gift," which the court held intended only "gifts *inter vivos,*" and not testamentary dispositions or successions. Our statute significantly supplemented the language thus construed by the interpolation of the words "transferred by inheritance, distribution, bequest or devise," thereby completely curing the act in this respect.

The opinion in Matter of Euston was delivered April 16th, 1889. Our statute was passed March 23d, 1892. It is a significant circumstance, to say the least, that the only essential particulars in which our act departed from its New York prototype was in the two respects by force of which, according to the construction of its own courts, the New York statute failed to apply to the property of non-resident decedents. Such highly circumstantial coincidences are not ascribed by courts to mere chance. On the contrary, they are held to be significant earmarks for the ascertainment of legislative intent. The well-settled rule of construction is that when a statute has been adopted from a sister state after a construction has been given to its language by judicial decision, it will be presumed that such interpretation of the statute is accepted as well as its words. *Fritts* v. *Kuhl,* 22 *Vroom* 191, 199.

The logical corollary of which is that when the only changes made in a statute thus adopted consist in alterations of language to which judicial construction has been given, the presumption will be that such alterations were made for the purpose of avoiding such construction. Especially must this be so when the changes, both of omission and of the sub-

stitution and supplying of words, are not only apt to produce such result, but when also, as in the present instance, there is no other conceivable explanation to account for such changes.

We have no hesitation, therefore, in concluding that the expressed object of the New Jersey statute was that all property within this state, regardless of the domicile of its former owner, should be subject to the inheritance tax provided by its first section.

This being so, we are brought to the next contention of the prosecutor, which is that the property that passed by the will of the decedent in the present case—i. e., the property he had as the owner of shares in a New Jersey corporation—is not "property within this state" within the contemplation of the statute under consideration, for the reason that the decedent was a non-resident. The question thus presented is whether the proprietary right that a stockholder has in a New Jersey corporation is, for governmental purposes, property within this state if he chance to reside here, but is property not within this state if he chance to reside elsewhere. The ultimate question is whether the property of a shareholder in a corporation created by the laws of a state is not, in legal contemplation, within that state for the purposes of constitutional taxation.

In either of these forms the question is one of first impression in this court. The decisions cited in the brief of counsel for the prosecutor do not touch the point. *State* v. *Ross,* 3 *Zab.* 517, concerned the taxation of bonds, not of stock. *State* v. *Branin, Id.* 484, and *State* v. *Thomas,* 2 *Dutcher* 181, concerned a tax upon corporations, not upon stock. While the matter is thus *res nova* in this state, it has been the subject of judicial examination in other jurisdictions, notably in Massachusetts, New York and the Supreme Federal Court.

Examination will show that the consensus of judicial opinion is that the impost we are considering is not a tax upon property, but is a premium or privilege upon the devolution of property—in fine, a succession tax, and that as such it rests fundamentally upon the sovereign right of a state to

withhold, and hence to limit, the right of testamentary disposition or of intestate succession.

Prior to the statute of wills passed in the reign of Henry VIII. the right of testamentary disposition did not extend to real estate, and as to personalty was limited by the common law as it stood in the time of Henry II., by which one-half, or in some cases one-third, of a man's goods were all that he could thus dispose of, the remainder being distributed by law. By the Code Napoleon various fractional parts only of a man's property were within his testamentary disposal. By the law of Italy a moiety might be thus disposed of. So that while historically there has been and is a general recognition by civilized states both of some right to disposition and of some right to inheritance, there is no established principle of law to prevent a sovereign state from abridging either of such rights, and *a fortiori* from imposing upon their exercise or operation such conditions as the public good may require. As matter also of history, succession taxes have existed in European states from an early time. Under the Roman law they were imposed quite generally. They were introduced into England in 1780, and into this country in 1826, Pennsylvania being the first state to adopt them. Constitutionally they rest, as before indicated, upon the doctrine that the rights of testamentary disposition and of succession are creatures of law, upon the exercise and operation of which the lawmaker may impose terms.

This was the ground of the opinion in the Supreme Court of the United States in *United States* v. *Perkins,* 163 *U. S.* 625, 628, where the United States itself was the legatee. In the course of his opinion Mr. Justice Brown said: "If it be true [as he had argued] that the right of testamentary disposition is purely statutory, the state has a right to require a contribution to the public treasury before the bequest shall take effect. Thus the tax is not upon the property, in the ordinary sense of the term, but upon the right to dispose of it, and it is not until it has yielded its contribution to the state that it becomes the property of the legatee." In an earlier case Chief Justice Taney, speaking of a somewhat similar law, in *Mager*

v. *Grima,* 49 *U. S.* 490, 493, said: "The law in question is nothing. more than an exercise of the power, which every state and sovereignty possesses, of regulating the manner and terms upon which property, real or personal, within its dominion may be transmitted by last will and testament or by inheritance. If a state may deny the privilege altogether, it follows that when it grants it it may annex to the grant any conditions which it supposes to be required by its interests or policy." This was likewise the view taken by the Court of Appeals of Maryland in *State* v. *Dalrymple,* 70 *Md.* 294, in which the court said: "One of the conditions upon which strangers and collateral kindred may acquire a decedent's property which is subject to the dominion of our laws is that there shall be paid out of such property a tax to the state. This, therefore, is not a tax upon the property itself, but is merely the price exacted by the state for the privilege accorded in permitting property so situated to be transferred by will, by descent or distribution." To the same effect are *United States* v. *Fox,* 94 *U. S.* 315; *State* v. *Ferris,* 53 *Ohio St.* 314; *State* v. *Hamlin,* 86 *Me.* 495; *State* v. *Alston,* 94 *Tenn.* 674; *Eyre* v. *Jacob,* 14 *Gratt. (Va.)* 422; 27 *Am. & Eng. Encycl. L.* 337; *Dos Pas. Inheritance Tax;* with which compare *Chambe* v. *Durfee,* 100 *Mich.* 112; *State* v. *Gorman,* 40 *Minn.* 232; *Curry* v. *Spencer,* 61 *N. H.* 624; *State* v. *Mann,* 76 *Wis.* 469.

Upon the more immediate question, whether shares of stock are personal property within the governmental jurisdiction of the state that created the corporation, without regard to the place of residence of the stockholder, the decided weight of authority is in support of such jurisdiction.

English cases throw but little light upon this question, for the reason that there the matter is treated as one of law without regard to *situs*—*i. e.,* if the law of England regulates the succession, the English tax will lie without regard to the *situs* of the property, and *per contra* if the succession be otherwise derived, English taxes will not lie even as to property having its *situs* there.

In this country, where the general doctrine of the state courts is that the *situs* of property governs its liability to suc-

cession taxes, the weight of authority is that stock in a corporation is subject to the imposition of succession taxes by the state that created the corporation, and that in this regard the place of residence of the deceased stockholder is immaterial. In the case of *Greves* v. *Shaw*, 173 *Mass.* 205, Justice Knowlton (afterwards Chief Justice) said: "There can be no doubt that stock in a corporation organized under the laws of this commonwealth is property within the jurisdiction of the commonwealth. Such a corporation being in a sense a citizen of this state, and having an abiding place here akin to the domicile of a natural person, is subject to the jurisdiction of the commonwealth, and is in fact within the commonwealth. The stockholders are the proprietors of the corporation, which is itself the proprietor of the property owned and used for the ultimate benefit of the stockholders."

In the later case of *Kingsbury* v. *Chopin*, 196 *Mass.* 533, decided November 26th, 1907, Chief Justice Knowlton, speaking of a succession tax upon shares in a railroad corporation organized under the same name by the laws of that state and of another state, said: "In a sense such a railroad company is a domestic corporation in each of the states where it is incorporated. We think that stock in such a corporation is 'property within the jurisdiction of this commonwealth' under the language of our statute authorizing taxation of collateral inheritances. We think it is property within the jurisdiction of the commonwealth in a constitutional sense such as to enable the state to subject it to taxation as against a nonresident owner."

In the *Matter of Bronson*, 150 *N. Y.* 1, Judge Gray, delivering the opinion of the New York Court of Appeals, said: "Corporate shares must be regarded as property within the broad meaning of that term. In legal contemplation the property of the shareholder is either where the corporation exists or at his domicile accordingly as it is considered to consist in his contractual rights or in his proprietary interest in the corporation." With respect to such proprietary interest it was further said: "The corporation is the creature of state laws, and those who become its members as shareholders

are subject to the operation of those laws with respect to any limitation upon their property rights and with respect to the right to assess their property interests for purposes of taxation."

In *St. Albans* v. *Car Company,* 57 *Vt.* 68, Judge Taft said: "The corporate home of the company is in this state. The corporation is expressly subject to the exclusive legislative authority of the state. Its dwelling is here, although it may do business elsewhere, and its members, when they enter into the relation of stockholders, do so subject to such changes in the law relating to the corporation as the supreme legislative authority deems it proper to make."

To the same effect is *Street Railroad Co.* v. *Morrow,* 87 *Tenn.* 406, and many other cases collected in 27 *Am. & Eng. Encycl. L.* 349, *sub-tit. "Succession Taxes,"* where the succinct summary of the text is: "In legal contemplation the property of a shareholder as represented by certificates of stock is where the corporation exists, and therefore the capital stock of a domestic corporation is considered as having a *situs* within the home state, even though the owner be a non-resident and the stock [certificates?] be in his possession without the state at the time of his death."

In the views thus expressed we concur to the extent of holding that the impost laid by our act for taxing collateral inheritances is not a property tax, but an excise upon the devolution of property on the death of its owner—in fine, a succession tax, a species of impost not unlike our franchise tax on the right of corporate existence; that such succession tax applies to all property within this state regardless of the place of residence of its former owner, and that stock in a New Jersey corporation is property within this state for the purposes of such succession tax, without regard to the place of residence of its late owner, or the place of deposit of the certificates of stock that evidence such ownership, or the location of the property owned by such corporation, or the place where its business is conducted. In a somewhat more precise form, our conclusion is that stock in a New Jersey corporation—*i. e.,* the proprietary right that a stockholder has in a

corporation of this state, relating, as such proprietary right does, to an anomalous species of intangible property that owes its existence solely to the laws of this state—is itself property within this state in the sense that it has an inherent and abiding *situs* here for all matters appertaining to sovereignty, among which is the levying of an impost upon the devolution of such property upon the death of its owner. And furthermore, that such intangible proprietary right, although it is personal property as regards the acts of its owner, is, from its nature and because of its inherent *situs,* unaffected as regards the acts of the sovereign by the circumstance that the domicile of its former owner was elsewhere than in this state. In fine, we think that the sovereign power to which a corporation owes its existence can never be wholly detached from it, and is not estranged from its creature by the circumstance that the owners of shares in the property thus created reside in one place rather than in another. The metaphor that pictures the state as giving birth to a corporation is a figure more bold than accurate, for (to carry out the metaphor) the natal cord between the two is never completely severed. Acts of ownership that do not trench upon this vital union do not call for the recognition of its existence, but acts of sovereignty that are based upon its existence demand its recognition. In effect the anomalous species of incorporeal personal property we are considering has a dual *situs* accordingly as it is regarded from the standpoint of ownership or from that of sovereignty. As to the former, the *situs* changes with the domicile of the owner, but as to the latter, the *situs* is always within the dominion of the sovereign. In this latter sense, and for the purposes of the legislation under review, the *situs* of every share of stock in every company incorporated by this state, and coming within the purview of the act, is within the State of New Jersey.

It may be superfluous to add that the whereabouts of the certificates of stock is immaterial upon the question of the legal *situs* of the property represented by them. Such certificates, being mere evidences of ownership, their place of deposit no more determines the *situs* of the personal property

of which they are a muniment of title than the place where a deed of conveyance is kept would determine the *situs* of the real property described in it. A practical illustration is our statutory provision for levying upon corporate stock under a *fieri facias,* the levy in such case being made, not upon the certificates of stock in the possession of the stockholder, but by notice to the corporate officer in possession of the books of registry of the stock itself. *Gen. Stat., p.* 1415, § 5.

Opposed to the foregoing conclusion, which is based upon the true nature and inherent *situs* of this species of property, there is really nothing by way of denial, the opposing contention being in effect a protest that by reason of the fiction *mobilia personam sequuntur* we are prohibited from looking into the true nature of the property in question or from determining its actual *situs.* I am convinced that this protest comes from having too much in view the corporeal certificates that evidence the intangible right in question whereby the nature of the right itself is lost sight of. The nature of such right will be best seen by conceiving of the right itself as existing unevidenced by any corporeal muniment of title. The legislature has declared that shares of stock are personal property, hence their *situs* follows the person of their owner, as far as the fiction of the common law applies. But this fiction, although sometimes spoken of as if it were a maxim of jurisprudence, is in reality but a fiction that was adopted from the Roman law, where it was based upon the division of all property according to its true nature into movables and immovables. Inasmuch as movables, which by reason of their nature were deemed to follow the person of their owner, soon came on this account to be called personal property, it was a short step to the paraphrase that personal property has no *situs* saving at the domicile of its owner. While the original fiction based on the true nature of movables has thus been lost sight of in the broader generalization, it is still useful to recur to it whenever matters are sought to be included in such broader generalization, not by reason of their true nature, but solely by force of fiat. Property thus brought within the scope of this fiction is without doubt amenable to it as regards

acts of ownership and contract, but not necessarily so as regards acts of sovereignty, a distinction that must be borne in mind whenever property created by and subject to the sovereign power of the state is at the same time susceptible of private ownership and control as personal property. In such cases, when the policy of the state conflicts "with the fiction due to historical tradition, the fiction must give way," to use the language of Mr. Justice Holmes, in *Blackstone* v. *Miller,* 188 *U. S.* 189, 206.

"It is a certain rule," said Lord Mansfield, "that a fiction of law shall never be contradicted so as to defeat the end for which it was invented, but for every other it may be contradicted." *Mostyn* v. *Fabrigas, Cowp.* 161.

"Although movables are for many purposes to be deemed to have no *situs* except that of the domicile of the owner," says Judge Story, in his *Conflict of Laws,* section 550, "yet, this being but a legal fiction, it yields whenever it is necessary for the purposes of justice that the actual *situs* of a thing should be examined."

In *People* v. *Tax Commissioners,* 23 *N. Y.* 224, Judge Comstock quotes with approval the foregoing, and adds: "I can think of no more just and appropriate exercise of the sovereignty of a state or nation over property situated in it and protected by its laws than to compel it to contribute towards the maintenance of government and law. Accordingly there seems to be no place for the fiction of which we are speaking (*mobilia personam sequuntur*) in a well-adjusted system of taxation."

In the article "Succession Taxes," in 27 *Am. & Eng. Encycl. L.* 347, the matter is thus summarized: "In the case of a non-resident decedent leaving personal property within the state, the maxim *mobilia personam sequuntur* does not prevail, and the *situs* of the personality depends upon whether *from its nature* the property can be said to be actually 'within the state.'"

Directly in point upon the matter we are now considering is the construction given by the New York Court of Appeals to the eleventh section of the Inheritance Tax act of that

state, which is, without change, the eleventh section of our act. The language of this section is as follows: "That whenever any foreign executor or administrator shall assign or transfer any stocks or loans in this state, standing in the name of a decedent, or in trust for a decedent, which shall be liable to said tax, such tax shall be paid to the state treasurer on the transfer thereof, otherwise the corporation permitting such transfer shall become liable to pay such tax; *provided,* that such corporation has knowledge before such transfer that said stocks or loans are liable to said tax."

Speaking of this language in its bearing upon the construction to be given to the act as a whole, Judge Vann, delivering the opinion of the court in the *Matter of Estate of Romaine,* 127 *N. Y.* 80, said: "This construction is confirmed by referring to other portions of the act, which provide that 'all administrators, executors and trustees' shall be liable for the taxes until paid (section 1), and that 'whenever any *foreign* executor or administrator shall assign or transfer any *stocks* or loans in this state, standing in the name of *a decedent,'* the tax shall be paid to the proper officer on such transfer, or the corporation permitting it shall become liable to pay the tax, provided it had knowledge of the facts in time (section 11). It is clear that the act is not confined to real estate, but embraces personal property, also including evidences of debt. *All* administrators are made liable for the tax, and corporations can transfer *stock* standing upon their books in the name of a *non-resident* decedent only at their peril until the tax thereon is paid. The fiction of law that personal estate has no *situs* away from the person or residence of its owner is done away with to a limited extent and for a specified purpose, and the truth is substituted in its stead as a rule of action." The decision that gave this construction to section 11 of the New York act was delivered on June 2d, 1891, and the section, thus construed, was adopted as section 11 of our act on March 23d of the year following. By force of the rule laid down in Fritts *v.* Kuhl, before referred to, it will be presumed that our legislature adopted the section in question as thus construed. Indeed, as counsel for the prosecutor in

his brief expressly says: "It has frequently been held that in the absence of New Jersey decisions upon the construction and effect of the Collateral Inheritance Tax law, New York cases construing similar provisions of the New York law are entitled to great weight, and will usually be followed." Citing *Estate of Strong,* 17 *N. J. L. J.* 234; *Hoyt* v. *Hancock,* 20 *Dick. Ch. Rep.* 688; *In re Vineland Historical and Antiquarian Society,* 21 *Dick. Ch. Rep.* 291.

We conclude, therefore, that the fiction under discussion is no bar to our examination into the true *situs* of the decedent's property in the present case, and affords no obstacle or answer to the determination we have reached as to such *situs.*

The subordinate point taken in the brief of counsel that the act of 1894 provides no adequate machinery for the levying and collection of the tax it imposes, and that its provision in cases of an appeal has been by implication repealed, is in part answered by what has already been said and by what has been cited from the New York cases, and in part rests upon a misconstruction of section 15 of the act. Even if well taken, the point would not lead to the nullification of the entire act.

No point is made that the surrogate of Essex county was not the proper officer to assess and cause the appraisement of the tax under review, and no such ground for the reversal of his assessment is set forth in any of the reasons that have been filed. The matter therefore has not been considered.

The conclusion we have reached is that the assessment brought up by this writ of *certiorari* should be affirmed.