OF THE

## STATE OF IOWA

AT

DES MOINES, SEPTEMBER TERM, 1909,
AND JANUARY TERM, 1910.

AND IN THE SIXTY-THIRD YEAR OF THE STATE.

---

In the Matter of the Estate of ALMIRON CULVER, deceased,
W. W. MORROW, Treasurer of State, Appellant, v.
MELISSA GOULD, Administratrix.

**Collateral inheritance tax:** CORPORATIONS: TAXATION OF STOCK.
Shares of stock in a corporation represent an interest in the
earnings and property of the corporation, and a certificate is not
stock itself but a representation of it, which may represent an
interest in either real or personal property; and as a corpora-
tion is under the jurisdiction and control of the State of its
domicile which directs the manner and form of its organization,
exercising supervisory power and the manner of its dissolution,
a nonresident owner of shares of stock has an interest in the
property of the corporation which is subject to the collateral in-
heritance tax law of this State.

VOL. 145 IA.—I.

*Appeal from Pottawattamie District Court.*—HON. O. D. WHEELER, Judge.

WEDNESDAY, DECEMBER 15, 1909.

THE opinion states the case.—*Reversed.*

*H. W. Byers,* Attorney General, and *George Cosson,* for appellant.

*Montgomery & Hall,* for appellee.

SHERWIN, J.—Almiron Culver at the time of his death was a resident of Kansas. He left to collateral heirs the following property: Ten thousand eight hundred dollars ($10,800) in cash deposited in the State Savings Bank of Council Bluffs, Iowa, and twenty-five shares of stock in the State Savings Bank of Council Bluffs, Iowa, which stock was represented by two certificates which were in the possession of Mr. Culver in Kansas at the time of his death. The certificates have since his death remained in Kansas in the hands of his administratrix. This proceeding was instituted for the purpose of assessing a collateral inheritance tax, and upon a hearing the district court found that the amount of cash on deposit in the bank of Council Bluffs was subject to such tax, but held that the twenty-five shares of stock in the bank owned by the decedent were not subject to such tax. The plaintiff appeals, and the correctness of the finding as to the bank stock is the only question we have for determination.

Section 1467 of the Code Supplement of 1907 provides as follows, so far as the same is material here: "All property within the jurisdiction of this state, and any interest therein, whether belonging to the inhabitants of this state or not and whether tangible or intangible, which shall pass by will or by statutes of inheritance of this or any other state, or by deed, grant, sale or gift made or intended

to take effect in possession or in enjoyment after the death of the grantor or donor, to any person in trust or otherwise, . . ." except to direct heirs and charitable, and educational institutions, etc., shall be subject to a tax of five per centum of its value. The State Savings Bank of Council Bluffs is a corporation organized under the laws of Iowa and located and doing business within the state. That the bank itself is within the jurisdiction of the state of Iowa will hardly be questioned. It is a general and familiar rule that a corporation is under the jurisdiction and control of the state of its domicile. The state directs the manner and form of its organization. It exercises supervisory power over it during its existence, and finally directs the manner of its dissolution.

The concrete question before us, then, is whether the interest of the decedent in the bank and its business is subject to the collateral inheritance tax of this state, notwithstanding the fact that his domicile was in another state, and that such interest was represented by certificates of stock which were in his possession at his domicile. The question has not heretofore been determined by this court. In *Gilbertson v. Oliver,* 129 Iowa, 568, relied upon by the appellee, no bank or other corporation stock was involved, for while Mrs. Whiting died the owner of shares of stock in the Onawa Bank of Iowa, which were devised to collateral heirs, the inheritance tax on such shares was paid without a contest. The entire discussion therefore related to evidences of debt and securities therefor, other than corporate shares of stock. In *Judy v. Beckwith,* 137 Iowa, 24, it was held that shares of stock in a foreign corporation, owned by a resident of this state, were subject to general taxation here. The collateral inheritance tax was not under consideration in that case, and hence it is not authority for the appellee's claim in this case, unless it be held that, because shares of stock in a foreign corporation are subject to general taxation in this state on account of

their personal character, a nonresident owner of shares of stock in an Iowa corporation has no property, "or interest therein," in said corporation which is subject to pay a collateral inheritance tax to this state. While negotiable instruments, certificate of deposit, and other evidences of debt held by a nonresident of the state are not subject to the collateral inheritance tax, we think the nonresident owner of shares of stock in a domestic corporation has an interest in the property of said corporation which is subject to the tax. Generally speaking, a "share of stock" in a corporation "may be defined as a right which its owner has in the management, profits and ultimate assets of the corporation. The right which a shareholder in a corporation has, by reason of his ownership of shares, is a right to participate according to the amount of his stock in the surplus profits of the corporation on division, and ultimately on its dissolution, in the assets remaining after payment of its debts." Cook's Corporations (2d Ed.), section 5; *Plimpton v. Bigelow,* 93 N. Y. 592. In *Fisher v. Essex Bank,* 5 Gray (Mass.) 373, Chief Justice Shaw defined a "share" of corporation stock as follows: "The right is, strictly speaking, a right to participate, in a certain proportion, in the immunities and benefits of the corporation; to vote in the choice of their officers, and the management of their concerns; to share in the dividends of profits, and to receive an aliquot part of the proceeds of the capital on winding up and terminating the active existence and operations of the corporation." It may be said that the authorities generally hold that "a share of stock is a proportional part of certain rights in the management and profits of the corporation during its existence, and in the assets upon dissolution." Cook, *supra; Rumball v. Metropolitan Bank,* L. R. 2 Q. B. Div. 194; *Judy v. Beckwith, supra.*

It follows from the foregoing definitions that shares of stock represent an interest in the earnings and property of the corporation, and that a certificate is not stock itself,

but only a convenient representation of it, for one may be
a stockholder without having a certificate issued to him.
The *Judy-Beckwith* case recognized the interest of the
shareholder in the property of the corporation, notwith-
standing the fact that the legal title thereto is in the cor-
poration. It is there said, in effect, that a share of stock
entitles the owner thereof to demand his proportion of the
dividends, and, upon dissolution of the corporation, to also
demand his proportion of the assets. It is also there said,
in effect, that, while shares of stock are personalty in the
nature of choses in action, they represent valuable rights
personal to the owner. There is in our judgment no incon-
sistency in saying that shares of stock are in the nature of
a chose in action, and in also holding that they represent
an interest in the property of the corporation. A share of
stock certainly is not real estate, and hence it must fall
within the definition of personal property; and still it may
represent an interest in either real or personal property.
*Faxton v. McCosh*, 12 Iowa, 527; *Commonwealth v. Stan-
dard Oil Co.*, 101 Pa. 148; *Farrington v. Tennessee*, 95
U. S. 679 (24 L. Ed. 558).

 *In Re Bronson*, 150 N. Y. 1 (44 N. E. 707, 34 L.
R. A. 238, 55 Am. St. Rep. 632), the Court of Appeals
had under consideration the right to impose a transfer tax,
similar to our collateral inheritance tax, upon shares of
stock in a domestic corporation owned and held by the de-
cedent, who was domiciled in the state of Connecticut, and
upon bonds issued by such corporation; and also held by
him, and that court held that the bonds were not subject
to such tax, basing its holding on that branch of the case
on the same rule announced by this court in the *Gilbertson-
Oliver* case, and held, on the other hand, that the share-
holders were interested in the operation of the corporate
property and franchises, and that their shares actually
represent undivided interests in the corporate enterprise.
It was said: "The corporation owns the legal title to all

the properties acquired and appurtenant, but it holds them
for the pecuniary benefit of those persons who hold the
capital stock. . . . . They have the right to share in
surplus earnings, and, after dissolution, they have the right
to have the assets reduced to money and to have them rat-
ably distributed. Each share represents a distinct interest
in the whole of the corporate property"—citing *Jermain v.
Railroad Co.,* 91 N. Y. 492; *Bradley v. Holdsworth,* 3
Mees. & W., 422. It was further said: "In the case of
bonds, they represent but a property in the debt, and that
follows the creditor's person. Hence it can not be said, if
the property represented by a share of the stock has its
legal situs either where the corporation exists or at the
holder's domicile, as we have said, . . . that the state
is without jurisdiction over it for taxation purposes. As
personalty the legal situs does follow the person of the
owner; but the property is in his right to share in the net
produce, and, eventually, in the net residue of the cor-
porate assets, resulting from liquidation. That right as a
chose in action must necessarily follow the shareholder's
person; but that does not exclude the idea that the property
as to which the right relates, and which is, in effect, a dis-
tinct interest in the corporate property, is not within the
jurisdiction of the state for the purpose of assessment upon
its transfer through the operation of the law, or of the
act of its owner. The attempt to tax a debt of the corpora-
tion to a nonresident of the state, as being property within
the state, is one thing, and the imposition of a tax upon
the transfer of any interest in or right to the corporate
property itself is another thing." This decision was ap-
proved and followed in *Re Fitch's Estate,* 160 N. Y. 87
(54 N. E. 701).

In Massachusetts they have a statute imposing a tax
on "all property within the jurisdiction of the common-
wealth and any interest therein, whether belonging to the
inhabitants of the commonwealth or not, and whether tan-

gible or intangible." That statute was before the Supreme
Judicial Court for construction in *Greves et al. v. Shaw,*
173 Mass. 205 (53 N. E. 372), and it was there said,
speaking of corporations organized under the laws of the
commonwealth: "Such a corporation being in a sense a
citizen of this state, and having an abiding place here akin
to the domicile of a natural person, is subject to the juris-
diction of the commonwealth, and is in fact within the
commonwealth. The stockholders are the proprietors of
the corporation, which is itself the proprietor of the·prop-
erty owned and used for the ultimate benefit of the stock-
holders. While the corporation has a full and complete
legal title to the corporate property, its ownership is in a
sense fiduciary, for on winding up its affairs the surplus,
after the payment of debts, must be divided among the
stockholders." This decision was followed in *Moody v.*
*Shaw,* 175 Mass. 375 (53 N. E. 891), and in *Kingsbury*
*v. Chapin,* 196 Mass. 533 (82 N. E. 700). See, also:
*Neilson v. Russell* (N. J. Sup.) 69 Atl. 476; *In re De*
*Lano* (N. J. Prerog.) 69 Atl. 482; *Union Transit Com-*
*pany v. Kentucky,* 199 U. S. 194 (26 Sup. Ct. 36, 50 L.
Ed. 150); *Buck v. Beach,* 206 U. S. 392 (27 Sup. Ct. 712,
51 L. Ed. 1106).

We have no doubt that the decedent owned an interest
in the property of the bank within the meaning of the stat-
ute, and that such interest is property within the jurisdic-
tion of this state. It is directly so decided in *Faxton v.*
*McCosh, supra,* and, if that be true, it follows that the
interest represented by the certificates of stock is subject
to a collateral-inheritance tax to the state of Iowa. Any
other holding would defeat the manifest purpose of the
law, and this should not be done. *Union Transit Co. v.*
*Kentucky, supra; Blackstone v. Miller,* 188 U. S. 204 (23
Sup. Ct. 277, 47 L. Ed. 439).

The judgment of the trial court is wrong, and it must
therefore be *reversed.*