## CHARLESTON

U. G. YOUNG v. B. P. GARRED.

Submitted April 4, 1922.     Decided April 18, 1922.

BANKS AND BANKING.—*Certificates of Shares of Bank Stock not Negotiable and Assignee Cannot Maintain Action at Law Against Remote Assignor for Fraud and Deceit in Sale and Transfer of Same to his Vendee.*

Certificates of shares of stock in a banking institution are not of like kind and character with bonds, notes and accounts, not negotiable, and. are not within the meaning of the word "writing" as used in section ·14, chapter 99 of the Code, and as assignee of such certificates cannot maintain an .action at law thereon against a remote assignor for fraud and deceit in the sale and transfer of such certificates to his vendee, under and by virtue of sections 14 and 15 of said chapter.

Case Certified from Circuit Court, Kanakha County.

. Action by U. G. Young against B. P. Garred. Ruling of circuit court, sustaining demurrer to certain counts of the declaration, certified to the Supreme Court for decision.

*Affirmed and certified ·back.*

*E. B. Dyer* and *Morgan Owen,* for plaintiff.

*Chilton, MacCorkle, Clark & ·MacCorkle,* for defendant.

LIVELY, JUDGE:

Plaintiff, U. G. Young, filed his declaration in assumpsit containing three counts, and the demurrer of defendant, B. P. Garred, was overruled as to the first count, being the common counts, and sustained as to the second and third counts, being special counts.    The plaintiff not desiring to amend, the court has certified its ruling upon the two special counts to this court for decision.

The second count in substance avers that on the 20th day of January, 1919, B. P. Garred, defendant, sold, assigned

and delivered to G. A. Porter two certificates of stock representing 155 shares fully paid of the par value of $100.00 each in the Day and Night Bank, a corporation, doing business in the city of Charleston, for the sum of $45,000.00 cash; that defendant at the time of the sale promised Porter that the stock was worth $60,000.00, and that the Day and Night Bank was in a solvent condition and that there was no outstanding obligation against the stock so purchased; that Porter relied on the representations of Garred and was misled thereby to his injury.    It further alleges that Porter, on the — —day of ——; 1919 sold said certificates of stock to Lou Wehrle and that subsequently in 1919 Wehrle sold the same to J. W. Solof, and that later in 1919 the plaintiff, without notice of defendant's deceit and fraud, and concealment of the true facts, and being misled thereby, purchased the said two certificates of stock from Solof for the sum of $60,000.00 cash and they were assigned and delivered to plaintiff by Solof.    It is also averred that defendant Garred was the president and a director of the bank at the time he sold the stock to Porter and actively engaged in its affairs and knew its financial condition; that he knew the bank was insolvent at the time of the sale and that the stock was worthless; that he knew it was impressed with and liable for an additional sum of $15,500.00, being the double liability imposed against the stock by the law under which the bank was organized.    Also, that in 1919, after plaintiff purchased the stock the bank was placed in the hands of a receiver under the laws of this State, and upon examination the bank was found to be insolvent and had been in that condition for more than 18 months; that there was a total want of consideration in the sale to Porter and that plaintiff, because of the facts alleged, was compelled to pay the full amount of the double liability to the receiver of the bank; that because of the facts above set out defendant became liable to pay to plaintiff the sum of $45,000.00, the amount received by defendant from Porter, with interest thereon from January 20, 1919, until paid and being so liable defendant promised plaintiff he would pay said sum and said interest but had failed to do so, to the damage of plaintiff of $100,000.00.

The third count sets up substantially the same facts alleged in the second count, except that it alleges generally the misrepresentations of defendant in the sale and assignment of the stock to Porter and that plaintiff was misled thereby to his injury and avers that at the time of the sale to Porter, Garred owned a controlling interest in the bank and had been instrumental in having published certain statements required by law, which statements, instead of showing the true condition of the bank, were false and showed the bank to be in a prosperous condition and the book value of the stock to be very much greater than par, and that defendant knew of the falsity of the statements; that Porter, the purchaser from Garred, knew that Garred was president and owned the controlling interest and had known him for a long time and had confidence in his integrity, and had seen and examined the statements of the bank so published and was induced to buy the stock because of the representations of Garred and because of the statements and was misled and deceived thereby to his injury.

Plaintiff predicates his right of action under these special counts upon sections 14 and 15 of chapter 99 of the Code which are as follows:

§ 14. "The assignee of any bond, note, account, or writing, not negotiable, may maintain thereupon any action in his own name, without the addition of "assignee," which the original obligee or payee might have brought; but shall allow all just discounts, not only against himself, but against the assignor, before the defendant had notice of the assignment. In every such action the plaintiff may unite claims payable to him, individually, with those payable to him as such assignee.

§ 15. "Any such assignee may recover from any assignor of such writing; but only joint assignors shall be joined as defendants in one action, and a remote assignor shall have the benefit of the same defense as if the suit had been instituted by his immediate assignee."

It will be seen from the history of this legislation that its purpose was to permit the assignee of a non-negotiable obligation to maintain an action at law on such obligation in his

own name aga'.nst any assignor thereof whether immediate or remote. At common law there was no privity of contract except between the assignor and his immediate assignee, and the remedy of the assignee was against his immediate assignor alone. This necessarily required as many suits at law as there were assignments, if it was desired to have recourse upon the first assignor. Originally, at common law, the law courts did not recognize the interest of an assignee of any obligation. His remedy was in equity, wherein it was presumed that a valuable consideration had been paid. Later, he was allowed to assert his claim at law but only in the name of his assignor for the assignee's use and benefit. · Independently of statute, he could not sue at law except in the name of his assignor, whose name he could use under the implied authority in the contract of assignment. 2 Story Eq. secs. 1040 and 1056. Section 16 of chapter 99 provides that equity shall not have jurisdiction of a suit on a bond, note or writing by an assignee or holder thereof, unless it appear that the plaintiff had not an adequate remedy therein at law, accentuating the change from the remedy at common law. But no such action can be maintained either at common law or under the present statute until the debt or obl;'gation has become due and payable and until legal recourse has been exhausted against the principal debtor, or unless it is shown that such recourse would be unavailing. The obligation, bond, note, account or other writing must be such that an action thereon can be maintained against the maker. The statute is dealing with non-negotiable paper evidencing debt. It so imports on its face. Section 14 designates the writings on which an assignee may maintain action. The writings therein mentioned import some money obligation; and the assignee is permitted not only to sue in his own name without using the designation of ''assignee,'' but he is also allowed to unite claims payable to himself individually with those created by the assigned writing. The words ''other writing'' mean some obligation, not negotiable, similar in legal intendment and effect with ''bond, note or account;'' and with which the assignee may unite individual claims of like kind payable to himself: Dr. Minor, in vol. 3 (part 1) of his Institutes, states that no other choses in action being included in the statute

except bonds, notes and writings, not negotiable, a judgment is not within its provisions, and the assignee of a judgment must still prosecute his remedies in a court of law in the name of his assignor, or in a court of equity in his own name.    But in 1887 the Virginia legislature extended the terms so as to include any other chose in action not negotiable which would include a judgment.    This action of the legislature of Virginia in thus enlarging the statute indicates that the word "writing" in the Code of 1860, from which our statute was taken, was construed to be a writing of like tenor and effect with bonds and notes.    The familiar doctrine of ejusdem generis applies here.    "Where there are general words following particular and specific words, the former must be confined to things of the same kind."    Lewis' Sutherland Stat. Const., sec. 422. The doctrine is perhaps better expressed in *Gundling* v. *Chicago*, 176 Ill. 340, where it is stated: "Where general words follow an enumeration of particular things, such words must be held to include only such things or objects as are of the same kind as those specifically enumerated."   The word "writing" is of such general significance that it would include a deed or a lottery ticket, and it is manifest that its meaning as used in the statute should be limited so as to correspond with the specific obligations preceding it, namely, "bonds, notes and accounts." It will be noted that the declaration is not upon the certificate of stock, but is based upon fraud and deceit in the sale thereof by defendant to one G. A. Porter, in which it is alleged that defendant fraudulently represented the shares to be of great value; that the bank which issued the same was solvent; and that there were no debts or outstanding obligations against said stock, all of which Porter relied upon and believed.   The certificates are described as representing 155 shares, fully paid, of the par value of $100.00 per share of the Day and Night Bank, a corporation.   It may be presumed that these shares are similar in form and effect to the ordinary certificates of shares of stock issued by a corporation, which state that the person to whom the certificate is issued is the owner of a stated number of shares of stock therein, fully paid and non-assessable, transferrable upon the books only upon surrender of the certificate

properly endorsed. Such certificates are not obligations to pay money. They are not writings evidencing debts like notes and bonds. The certificates are evidence of existence and ownership of the stock, which is a species of incorporeal property. They are in the nature of muniments of title to a species of property which our statute has designated as personal property. *Lipscomb* v. *Condon*, 56 W. Va. 416. The ownership of the shares gives "the right to participate, in a certain proportion, in the immunities and benefits of the corporation; to vote in the choice of their officers, and the management of their concerns; and to share in the dividends or profits, and to receive an aliquot part of the proceeds of the capital, on winding up and terminating the active existence and operations of the corporation." 4 Thomp. on Corp. p. 72. The statute is not dealing with muniments of title or writings of that character; it is dealing with non-negotiable paper, as distinguished from negotiable paper, such as bills, bonds, notes or writings sealed or unsealed by which there is a promise, or undertaking to pay money.

The corporation is not a debtor and did not promise to pay any sum by virtue of the certificates issued to defendant. There is no obligor or principal debtor and hence no one against whom a remedy could be exhausted before preceeding against the assignor. Plaintiff relies upon our case of *Trustees of Broaddus Institute* v. *Siers*, 68 W. Va. 125, as a precedent for maintenance of his action under sections 14 and 15 of chapter 99 of the Code. That case was a suit by an assignee against a remote assignor of a bond for the sum of $1300.00 which had been issued to him by a building and loan association in satisfaction of the supposed value of ten shares of stock of said association. The bond became due seven years from date and bore interest payable semi-annually. It fell within the express terms of said section 14; a bond to pay money on a date certain. That the bond was given by the association to Siers for the payment of stock in the association, upon the erroneous assumption that the shares had matured, did not change the character of the obligation. Moreover, so called "stock" in a building and loan association is totally different from shares of stock in the ordinary corpora-

tion. What is called "capital stock" of a building and loan association is made up from various sums paid in by its members from time to time, and may be withdrawn by them, and thus sever their relations when they desire. A person is a debtor, when he becomes a member, for the agreed payments to the common fund, which is used solely among the members, and a creditor, when he desires to withdraw and gives notice of withdrawal. *Building and Loan Association* v. *County Court*, 42 W. Va. 818.

It is argued that a certificate of stock in a corporation is a "chose in action", and that the word "writing" in the statute is broad enough to and does include all choses in action. It will be observed that shares of stock are designated as personal estate by section 20, chap. 53 of the Code; and it was said by Judge POFFENBARGER in *Lipscomb* v. *Condon, supra*, that such shares are in the nature of choses in action, intangible property, and the certificate is a muniment of title to the shares. In *Cates* v. *Baxter*, 97 Tenn. 443, it is held that shares of stock are not simply and purely choses in action in the sense that open accounts are held to be, and that the shares simply represent the interest of the stockholder in the corporation; and the certificates are the mere indicia of the interest, also stock is a peculiar species of property sui generis. "Chose in action is a phrase which is sometimes used to signify a right of bringing an action, and, at others, the thing itself which forms the subject matter of that right, or with regard to which that right is exercised; but it more properly includes the idea both of the thing itself and of the right of action as annexed to it. Thus, when it is said that a debt is a chose in action, the phrase conveys the idea not only of the thing itself, i. e. the debt, but also of the right of action or recovery possessed by the person to whom the debt is due." Blacks Law Dict. (2nd Ed.) p. 198. In *Ramsey* v. *Gould*, 57 Barb. (N. Y. 398, the following appears: " 'Chose in action,' as defined by Burrill, is 'a thing which a man has not the actual possession of, but which he has a right to demand by action, as a debt or demand due from another.' " It is clear that an owner of shares of stock cannot, by virtue of such ownership, sue on the stock to recover any money. When dividends or other

money is recovered by an owner of stock there must have been some corporate action authorizing the payment. Sometimes shares of stock are called choses in action, or as being in the nature of choses in action. Anno, Cas., 1916 C, p. 842; *Morrow* v. *Gould,* 145 Ia. 1. But even though they might be called choses in action or in the nature of choses in action, it is certain that they do not import payment of money on which a suit can be maintained for that purpose, so as to give an assignee of the certificate a right under the statute to maintain action against a remote assignor.

We are of the opinion that a certificate of shares of stock in a corporation is not a "writing" on which an action at law may be maintained by an assignee against a remote assignor under the statute above quoted, in an action of assumpsit for fraud and deceit in the transfer or sale of such certificate by such remote assignor to his immediate assignee or vendee; and hence the demurrer to the special counts Nos. 2 and 3 in the declaration was properly sustained; and we so answer the question certified.

*Affirmed and certified back.*