Appeal of THORNTON CLANEY LUMBER CO. (now BISHOP LUMBER CO.).

Docket No. 4665.    Decided July 27, 1926.

*Held,* that the stockholders of a corporation are not the owners of the corporate property, and that the sale by the stockholders of their stock does not in any way affect or change the corporation's invested capital.

*James B. Westcott, Esq.,* for the petitioner.
*M. N. Fisher, Esq.,* for the Commissioner.

Before MARQUETTE and GREEN.

This appeal is from the determination of deficiencies in income and profits taxes for the years 1917 and 1918, in the total amount of $48,943.87. The deficiencies arise from the exclusion by the Commissioner from the taxpayer's invested capital for the years named of the amount of $211,073.24, representing appreciation of assets and restored depreciation.

### FINDINGS OF FACT.

The taxpayer is an Illinois corporation with its principal office and place of business at Chicago, Ill. It was organized in May, 1906, under the name of Thornton Clancy Lumber Co., with a capital stock of $200,000, divided into 2,000 shares of common stock of the par value of $100 each. The name of the corporation was changed to " Bishop Lumber Company " in the year 1925.

In December, 1906, the capital stock of the corporation was increased to $300,000, and there were issued an additional 1,000 shares of common stock. Upon the issuance of this additional stock, the stockholders of the corporation and the number of shares of stock held by each stockholder were as follows:

| | Shares. | | Shares. |
|---|---|---|---|
| S. H. Fullerton | 1,524 | Wm. Claney and Sons | 225 |
| C. M. Smalley | 1 | John Claney | 483 |
| E. L. Thornton | 500 | | |
| A. B. Claney | 267 | Total | 3,000 |

The one share standing in the name of C. M. Smalley was actually owned by S. H. Fullerton.

In October, 1912, the capital stock was further increased to $600,000 by the issuance of $300,000 par value preferred stock. After such increase the stockholders of the corporation and the number of shares of stock held by each stockholder were as follows:

| | Shares | |
|---|---|---|
| | Common | Preferred |
| S. H. Fullerton | 1,524 | 1,524 |
| C. M. Smalley | 1 | 1 |
| E. L. Thornton | 500 | 500 |
| A. B. Claney | 267 | 267 |
| Wm. Claney and Sons | 225 | 225 |
| John Claney | 483 | 483 |
| Total | 3,000 | 3,000 |

At the time of its organization the corporation acquired certain real estate, on which its yard is now located, at a cost of $109,668.30.

In the early part of the year 1916, S. H. Fullerton, who then owned 1,525 shares of the common stock and 1,525 shares of the preferred stock of the corporation, desired to dispose of his stock, and the other stockholders agreed to buy it from him. In order to ascertain the then value of the stock, a real estate dealer and appraiser, who was not connected with the corporation, was employed to appraise the real estate owned by the corporation. The appraisal, the report of which was dated February 25, 1916, fixed a value for the land and building at $366,250, of which $322,300 was allocated to the land and $43,950 to the improvements thereon. The difference between the value of the land as fixed by the appraiser, to wit, $322,300, and the cost of the land to the corporation, to wit, $109,668.30, or $212,631.70, represented the increase in the value of the land between the date it was acquired by the corporation and the date of the appraisal.

The corporation did not appreciate this real estate on its books to the full extent of the appreciation thereof as shown by the appraisal, but did add to its " Real Estate Account " the amount of $183,331.70. There was also restored to the " Depreciation Account " the amount of $27,741.54, which had theretofore been charged off. As a result of this increase of $183,331.70 in the corporation " Real Estate Account " and the restoration of $27,741.54 to the " Depreciation Account," the book value of the corporation's assets was increased by the amount of $211,073.24.

On March 9, 1916, S. H. Fullerton sold to the other stockholders of the corporation all of his shares of stock therein. The sales price was the book value of the stock, after the " Real Estate Account " had been increased by the amount of $183,331.70 and the amount of $27,741.54 had been restored to the " Depreciation Account " as aforesaid.

The taxpayer, in computing its invested capital for the years 1917 and 1918, included therein the amount of $211,073.24, representing the aforesaid appreciation of its " Real Estate Account " and the restoration to its " Depreciation Account." The Commissioner, however, excluded these items from the taxpayer's invested capital and determined that there are deficiencies in tax in the amount of $13,646.70 for the year 1917 and $35,297.17 for the year 1918.

OPINION.

MARQUETTE: The only question for decision in this appeal is whether or not, under the circumstances set forth in the findings of fact, the taxpayer may include in its invested capital for the years 1917 and 1918 the amount of $211,073.24 added to the book value of

its assets in the year 1916, representing the increase in value of its real estate since the date of acquisition and restored depreciation. The taxpayer contends that the stockholders of a corporation are the beneficial owners of the corporate assets, the corporation merely holding the legal title to the assets in trust for the stockholders; that the sale by Fullerton of his stock, which was more than 50 per cent of all of the capital stock of the corporation, constituted in fact a transfer and change of ownership of more than 50 per cent of the corporate property, and that the corporation should be allowed to include that property in invested capital at the value thereof at the date of transfer.

The taxpayer's position is obviously untenable. The conclusion it seeks to impress on the Board is the result of an ingenious argument based upon an erroneous premise. That the stockholders of a corporation are not the owners of the corporate property is now well settled. In the case of the *Rhode Island Hospital Trust Co.* v. *Doughton*, 270 U. S. 69, it was necessary for the court to pass on the question as to the ownership by stockholders of the property of the coporation. Mr. Chief Justice Taft, delivering the opinion of the court, said :

In this case the jurisdiction of North Carolina rests on the claim that because the New Jersey corporation has two-thirds of its property in North Carolina, the State may treat shares of its stock as having a situs in North Carolina to the extent of the ratio in value of its property in North Carolina to all of its property. This is on the theory that the stockholder is the owner of the property of the corporation, and the State which has jurisdiction of any of the corporate property has *pro tanto* jurisdiction of his shares of stock. We can not concur in this view. The owner of the shares of stock in a company is not the owner of the corporation's property. He has a right to his share in the earnings of the corporation, as they may be declared in dividends, arising from the use of all its property. In the dissolution of the corporation he may take his aliquot share in what is left, after all the debts of the corporation have been paid and the assets are divided in accordance with the law of its creation. But he does not own the corporate property. * * *
* * * The cases of *Bronson's Estate*, 150 N. Y. 1, 8, and *In re Culver's Estate*, 145 Iowa, 1, said to hold that a stockholder owns the property of the corporation, are really authorities to the point that shares of stock in a corporation of a State have their situs for purposes of taxation in that State, as well as in the residence of the owner of the shares. But whatever the view of the other courts, that of this court is clear, the stockholder does not own the corporate property.

It follows that, since Fullerton as a stockholder of the taxpayer corporation was not the owner of its assets or of any part thereof, the sale and transfer of his shares of stock to the other stockholders did not effect a transfer or change of ownership of any part of those assets. The corporation was the owner of the corporate property

before the transaction and it was the owner of the same property after the transaction. There was no change in the assets or of the ownership effected by the transfer of Fullerton's stock, and it did not in any way affect or change the corporation's invested capital. See *Appeal of The Shipowners & Merchants Tugboat Co.*, 4 B. T. A. 403. The increased value in question of the taxpayer's assets therefore may not be included in its invested capital. *LaBelle Iron Works* v. *United States*, 256 U. S. 377.

> *The deficiency for the year 1917 is $13,646.70 and that for 1918 is $35,297.17. Order of redetermination will be entered accordingly.*