Bryant *v.* McGowan, Appellant.

530

Argued October 1, 1942.

Before Keller, P. J., Cunningham, Baldrige, Rhodes, Hirt and Kenworthey, JJ.

*Joseph Blank,* for appellant.

*H. Francis DeLone,* with him *Benjamin Lipshultz* of *Lipshultz & Lipshultz,* for appellee.

Opinion by Keller, P. J., February 26, 1943:

This case originated in an "action arising from contract" brought before a magistrate of the City of Philadelphia and appealed by the defendant to the Municipal Court. The case was tried in that court before a judge without a jury. From the judgment,

entered upon a finding in favor of the plaintiff, the defendant has appealed to this court.

For purposes of appeal the parties have filed an *agreed statement of facts,* pursuant to our Rule No. 56. Counsel for appellee has misunderstood the purpose and effect of that provision of the rule. It is intended to save the expense of printing the testimony; but it does not preclude this court from referring to the original record and examining the pleadings and evidence if they are deemed helpful in the decision of the case. The rule does not limit our consideration of the case to the "agreed statement of facts". It is not like a 'case stated' filed in the court below. We review the case just as it was presented to the lower court.

The facts thus agreed upon, as modified by the record, are as follows:

On August 31, 1936, the Division of Disbursement of the Treasury of the United States issued a veteran's widow's compensation check[1] in the sum of $71 payable "to the order of Mrs. Catherine Nelson, as unremarried widow of Chas. Nelson, 3015 N. Stillman St., Philadelphia, Pa." The defendant, McGowan, cashed the check for the payee and in turn delivered it to the plaintiff, Bryant, receiving the full face value of the check. The plaintiff deposited the check to his account in the Girard Trust Company, which presented it for payment to the Federal Reserve Bank of Philadelphia, and it, in turn, collected it from the Treasurer of the United States and acknowledged payment on September 3, 1936.

In December, 1939, the Treasury Department discovered that at the time the check in question was issued, the payee, Mrs. Nelson, was actually remarried,

---

[1] The agreed statement calls the check "a veteran's compensation check". It was more accurately a veteran's widow's compensation check. See U. S. Code, Title 38, §472b, et seq.

and through the Federal Reserve Bank demanded reimbursement from the Girard Trust Company. The record does not show that such reimbursement was actually made, but we will assume that it was. The Girard Trust Company charged the plaintiff's account with the amount of the check. There is no evidence that any of the parties were aware of the fact that Catherine Nelson had remarried. The plaintiff brought action separately against McGowan and the Girard Trust Company.

Both cases were tried together before Judge TUMOLILLO without a jury. The court found in favor of the plaintiff against John J. McGowan, the above defendant, and in favor of the Girard Trust Company, defendant in the other case. A motion for judgment n.o.v. was filed by McGowan, and the court dismissed said motion; and a similar motion by said plaintiff in the Girard Trust Company case (Municipal Court, October Term, 1940, No. 188) was deferred pending the disposition of this appeal.

The court disposed of the case on the theory that the addition of the words, "as unremarried widow of Chas. Nelson", amounted to a *condition* that the payee had not remarried. It held, in effect, that the check was payable on a *contingency;* if so, it was not negotiable: Negotiable Instruments Law of May 16, 1901, P. L. 194, section 4.

The plaintiff, in his statement, had not so declared. He based his cause of action on an alleged warranty by the defendant, as an *indorser* of the check, of the genuineness of the title of the *prior indorser,* the payee of the check, and on a claim for reimbursement or refund "over the *guarantee of prior indorsements".*

The words, 'indorser' and 'indorsement' as used in connection with the warranty or guaranty assumed by one merely writing his name on the back of the instrument, are technical words, applied only to negotiable

paper: *Patterson v. Poindexter*, 6 W. & S. 227, 234; Norton on Bills and Notes (2d Ed.), sec. 56. "An indorsement is classed by itself as a distinct body of contract rights and liabilities. It has its origin in and is confined to the theory of negotiability". Norton, sec. 57, p. 106.[2]

The defendant contends that the italicized words in, "Pay to the order of Mrs. Catherine Nelson, *as unremarried widow of Chas. Nelson*", were not used as a condition or contingency affecting its negotiability, but merely by way of *description of the person* to whom payment was to be made—just as the inclusion of the payee's address, and the additional words appearing on the face of the check, "Object for which drawn—Veterans", are descriptive. They helped to identify the payee, and indicated the fund or account to be debited, or stated the transaction which gave rise to the instrument ('Act of May 16, 1901, P. L. 194, sec. 3, par. 1 & 2), but did not affect its negotiability. See *Dunning v. Heller*, 103 Pa. 269; *International Fin. Corp v. Phila. Drug Co.*, 312 Pa. 280, 283, 167 A. 790; *Gerber's Est.*, 337 Pa. 108, 120-121, 123-5, 9 A. 2d 438. The check itself showed that the form used had been approved by the Comptroller of the Treasury on January 27, 1913, and if it had been the intention of the Government to destroy its negotiability, so that the payee could not get her money until it had been presented to the Treasury and it had determined that she was legally entitled to be paid, it could easily have adopted a form that would have put it beyond question; but the trouble and inconvenience to *it*, as well as to the payee, would have been too burdensome to warrant it. The *identification* was comprehensive so as to avoid the possibility of any person but the intended payee receiving the money. The Treasury, apparently, chose to rest its protection against

[2] See also, *Young v. Sehon*, 53 W. Va. 127, 44 S. E. 136, 139; 10 C.J.S., Bills and Notes, sec. 204.

a payee wrongfully accepting payment of the money, or receiving the money when not entitled to it, on the penal provisions of the statutes—see 38 U. S. Code, sections 510, 713, 714, and on its undoubted right to proceed civilly against the person so unlawfully obtaining the money. Certainly, there was no warrant for shifting the responsibility of determining the right of the payee to her compensation, from the Treasury Department, which was both drawer and drawee of the check, to the individuals or banks who in good faith had cashed it, notwithstanding that the Treasury, as drawee, had recognized it as legal by paying it. Suppose a life insurance company should have determined that its policyholder, John Doe, was entitled under a provision of its policy to a monthly benefit of $100 because of permanent and total disability, and pursuant thereto sent him regularly a monthly check or draft drawn upon its Home Office for that amount, would anyone seriously contend that after it had in due course paid such a check drawn to the order of "John Doe, 123 Market Street, Philadelphia, as Insured, under Permanent and Total Disability provision, Policy X100,-000", it could recover back from the indorsers, who had cashed it, the money paid by it, because it had discovered, three years later, that John Doe's disability was not permanent and total when the check was issued and cashed? The responsibility resting upon the drawee, who is also the drawer, cannot be thus shifted to innocent indorsers.

Defendant relied on the case of *United States v. Peoples-Pittsburgh Trust Co.,* 34 Fed. Supp. 230, 37 D. & C. 683—a case precisely like this one, up to the point where demand was made on the trust company for reimbursement or repayment of the money paid to it by the Federal Reserve Bank or the Treasurer of the United States. The only difference between the two cases was that in the Peoples-Pittsburgh Trust Com-

pany case, the trust company *refused* to repay the money, and the United States brought assumpsit for breach of prior indorsement guaranties on the check; while in this case, we *assume* that the Girard Trust Company made the repayment and then charged its depositor with the amount so paid.[3]

. The lower court in the present case recognized that the right of this plaintiff to recover depended on the right of the Government to *require* repayment of the check from the Girard Trust Company. It said: "It is clear that, if the Girard Trust Company did not have the right to repay the amount received to the Treasurer of the United States, the Girard Trust Company should be the only party liable. On the other hand, if the Girard Trust Company had the right to repay and charge plaintiff's account plaintiff has the right to recover from McGowan, from whom he received the instrument for value."

In deciding the Peoples-Pittsburgh case against the plaintiff, (the United States), Judge McVicar said: "Plaintiff contends that defendant guaranteed that Rose Valenti was a widow by its contracts of guaranty. Defendant claims that it did not; that it simply guaranteed that the person who made the endorsements was the person named in the checks as payee. I am of the opinion that defendant's contracts of guaranty were limited to the fact that the payee named therein en-

---

[3] The court below tried to distinguish between the cases by saying "In the Peoples-Pittsburgh case defendant was a bank which merely acted as an agency for collection". There is no warrant for that statement. The court in that case stated: "Defendant had *cashed other checks* drawn by the Treasurer of the United States to the order of Mrs. Valenti." The appellee recognized in his brief on appeal, page 2, that the Peoples-Pittsburgh Trust Company had *cashed* the check. The indorsements of the two trust companies contained the identical words relied on: "Prior indorsements guaranteed".

dorsed the checks, and not that she was a widow at the time that it made the endorsements."

The case was decided on the principle established in this Commonwealth by the decisions in *Land Title & Trust Co. v. Northwestern National Bank,* 196 Pa. 230, 46 A. 420, and *North Philadelphia Trust Co. v. Kensington National Bank,* 328 Pa. 298, 196 A. 14. Those cases hold that where the person who indorsed the check and received the money was in fact the person to whom the drawer bank delivered the check and whom it believed to be the payee named in the check, a collecting bank which had guaranteed prior endorsements was not liable to the drawer bank, when it turned out that the person to whom the check was given was really not the payee named in the check, but had forged the payee's name in indorsing the check. The principle was approved in *Market Street T. & T. Co. v. Chelten Trust Co.,* 296 Pa. 230, 145 A. 848, and *Com. v. Globe Ind. Co.,* 323 Pa. 261, 270, 185 A. 796. They hold that the payment is good if it was, in fact, made to the *person* to whom the drawer delivered the check with the intention that the money should be paid to him or her. The Peoples-Pittsburgh case was not appealed by the United States.

There was no *forgery* by Mrs. Nelson in this case. But if there had been, a delay of over three years in discovering it and seeking repayment would be fatal to a recovery. The Treasury was both drawer and drawee, and was bound to know its own checks: *Market St. T. & T. Co. v. Chelten Trust Co.,* 296 Pa. 230, 241, 145 A. 848, 852. The defendant in his affidavit of defense raised this point.

The introductory word, 'as', is not appropriately used to create a condition or contingency. See 3 Williston on Contracts, Revised Ed., sec. 671.

We are of opinion that the words following the naming of Mrs. Catherine Nelson as payee of the check did

not create a condition or contingency, but were merely descriptive and explanatory of the payee and the transaction, and that the check was a negotiable instrument; and as payment was made to the person named in the check, to whom it was intended to be paid when drawn and issued, the Treasury had no right to require repayment of it from the Girard Trust Company, and the latter had no legal right to charge the money paid by it against the plaintiff, nor has the plaintiff any legal right to demand reimbursement from the defendant.

But we are further of the opinion that the plaintiff's position would not be improved if it should be held that the check, although in other respects negotiable, was rendered non-negotiable because of the words following the payee's name.

Our law of negotiable instruments, with its implied contract of 'indorsement', stems from the 'custom of merchants' or the 'law merchant', which was incorporated into the common law of England, and became part of the common law of Pennsylvania. So strictly was it limited that it was not applied to 'promissory notes', until the Statute 3 and 4 Anne, chap. IX[4] gave them the same effect as inland bills of exchange and made them negotiable by indorsement and delivery.

The implied contract of indorsement did not apply to a non-negotiable instrument, and merely writing one's name on the back of it amounted to nothing more than an equitable assignment of his interest in it. It was not an 'indorsement' within the law of negotiable instruments and imposed on the signer none of the contractual liabilities of such an 'indorsement'.

In *Patterson v. Poindexter*, 6 W. & S. 227, 234-5, Chief Justice GIBSON said: "None but a commercial instrument is a subject of reference for the terms of an

---

[4] Held by the Judges of the Supreme Court to be in force in Pennsylvania, Roberts' Digest, 375.

endorsement ...... The contract of endorsement is not an independent one, but a parasite which, like the chameleon, takes the hue of the thing with which it is connected. Attached to commercial paper, it becomes a commercial contract operating as a contingent guaranty of payment, and a transfer of the title where the paper is negotiable: attached to any other chose in action, it becomes an equitable assignment of the beneficial interest *without recourse to the assignor.*" (Italics supplied).

To impose the liability of an 'indorser' on a person writing his name on the back of a non-negotiable instrument some additional agreement evidencing such an undertaking must appear on the back of the instrument above his signature: *Kline v. Keiser,* 87 Pa. 485; *Miners State Bank v. Auksztokalnis,* 283 Pa. 18, 24, 25, 128 A. 726; or an actual agreement of the parties in writing that he should become responsible for the payment of the instrument as an 'indorser' must be shown, accompanied by a valuable consideration [5]: *Shaffstall v. McDaniel,* 152 Pa. 598, 600, 601, 25 A. 576; *Colonial Trust Co. v. Morse,* 97 Pa. Superior Ct. 499, 501; *Continental Guaranty Corp. v. Hughes,* 81 Pa. Superior Ct. 264, 266. See also, *National Union Bank v. Shearer,* 225 Pa. 470, 480, 74 A. 351; *Citizens National Bank v. Piollet,* 126 Pa. 194, 17 A. 603; *Reardon's Est.,* 307 Pa. 350, 161 A. 315.

However, we ground our decision on our ruling that the check in question was a negotiable instrument; that the words following the name of the payee, Mrs. Catherine Nelson, were inserted for the purpose of identifying her, and to indicate the fund or account to be debited and state the transaction which gave rise

---

[5] Since our Statute of Frauds of April 26, 1855, P. L. 308. On the other hand, the mere indorsement of a *negotiable* instrument is sufficient under the Negotiable Instruments Law of 1901, P. L. 194.

to the instrument, and did not affect its negotiability; and that a good title to the check passed by indorsement and delivery; that the money was paid to the *person* named in the check, to whom the drawer intended it should be paid, and that the Treasury could not require the Girard Trust Company to refund the money so paid, nor could the Girard Trust Company legally charge the repayment to the plaintiff, nor could the plaintiff recover it back from the defendant.

The judgment is reversed and is now entered for the defendant notwithstanding the verdict or finding of the judge.[6]

---

[6] Since the argument the plaintiff has died and the executor of his will has been substituted as plaintiff.