# BANK OF AMERICA, Appellant v. BUTTERFIELD et ux., Respondents

## (88 N.W.2d 909)

(File No. 9667. Opinion filed March 21, 1958)

**Temmey & Luby,** Huron, for Appellant.
**Royhl, Benson & Beach,** Huron, for Respondents.

RENTTO, P. J. ▆ This action concerns the liability of the defendants to the plaintiff bank on their indorsement of a draft paid to them as payees but which the drawer refused to honor on its presentation by the plaintiff drawee.

The defendants are long-time residents of Huron, South Dakota. On or about January 23, 1953, Mr. Butterfield received a letter from one Lloyd M. Wampler containing the following statement: "In checking the official records of Rosebud County, Montana, it is noted that you are the record owner of the oil and gas rights under the North Half of Section 17, Township 9 North, Range 42 East." In that letter he included an offer to purchase a 50% interest of these rights for $1,200. Wampler was acting as agent for Culver Company, a partnership of Casper, Wyoming, engaged in the business of acquiring and selling oil leases. This offer had not been solicited by the defendants. Apparently they refused it.

On March 15, 1953 Wampler again wrote Butterfield offering him $2,000 less $2.10, the cost of the revenue stamps, for such interest. Accompanying this offer were mineral deeds to be executed by the defendants, a draft in payment of the amount offered, and instructions for execution and delivery of the deeds. The letter stated that the draft was to be deposited for collection. Defendants accepted this offer and executed the deeds which they mailed to Culver. That Company on March 26, 1953, transferred all of its rights in and to the North Half of said Section 17 to Boquillas Company.

The draft was in words and figures as follows:

"Collect Directly Through Bank of America NT&SA No. 99

February 26, 1953

Subject to Approval of Title
Pay to the
Order of Vernon H. Butterfield & Laura E. Butterfield

$1997.90

* * *One Thousand Nine Hundred Ninety Seven & 90/100 Dollars
Consideration for an undivided 50% mineral interest under N½ of Sec. 17, T. 9 N., R. 42 E., MM., Rosebud Co.,
Montana, containing
320.00 acres
Payable through
San Francisco The Culver Company
   Main Office   By A. M. Culver
. Bank of America
   NT&SA
Present at Room 950,
300 Montgomery Street,
San Francisco 4,
   California.
In the left margin appears the following: 'The Culver Company Casper National Bank Bldg., Casper, Wyoming.' "

The Butterfields on March 19, 1953 signed their names on the back of said draft and presented it to their bank in Huron. That institution credited their account in the amount thereof and forwarded it to a bank in Chicago, which in turn forwarded it to the Federal Reserve Bank of San Francisco. This bank cleared the item to the plaintiff bank's central clearing office. On March 28, 1953, plaintiff paid to the Federal Reserve Bank the amount of the draft and then sent it to the drawer for collection. Culver Company refused to pay it because Butterfield's title to the oil and gas rights had not been approved.

When plaintiff learned that the item had been dishonored it was then too late to make reclamation on the Federal Reserve Bank. The operation's officer of plaintiff's main San Francisco office admitted that it should have handled the draft as a collection rather than as a cash item because it was drawn subject to approval of title. It subsequently sent the draft to defendants' bank in Huron for collection from the defendants but this effort was fruitless. Thereafter, this action was instituted on April 23, 1954. The matter was tried to the court without a jury.

Plaintiff bank appeals from the judgment entered therein for the defendants.

All of said section 17 had been sold to Butterfield by the Northern Pacific Railroad on or about March 30, 1916. The deed from the Railroad contained a reservation of all minerals excepting such amount of coal as the grantee or his successors needed for domestic use. By deed dated April 10, 1917, Butterfield conveyed the N½ of said section incorporating therein a reservation of minerals similar to that in the deed by which he got the property. He had nothing further to do with this land thereafter until 1952 when an agent of Shell Oil Company offered to, and did, lease his oil and gas rights. This lease it held for about a year.

The party to whom Butterfield sold the land in 1917 held it about 7 months and then conveyed it by deed containing the original mineral reservation. Shortly after this conveyance a blanket deed covering the land described in the draft and numerous other premises was recorded conveying the minerals, originally reserved by the Railroad Company, from it to the separate owners of the land therein described as original grantees or as their successors in interest.

The complaint in this action seeks recovery on the theory that the defendants are liable as indorsers of the draft. This view is bottomed on SDC 46.0507. That section provides as follows:

> "Every indorser who indorses without quali-fication, warrants to all subsequent holders in due course:
>
> "(1) The matters and things mentioned in sub-divisions one, two and three of section 46.0506; and
>
> "(2) That the instrument is at the time of his indorsement valid and subsisting.
>
> "And, in addition, he engages that on due presentment, it shall be accepted or paid, or both, as the case may be, according to its tenor, and that if it be dishonored, and the necessary pro-

ceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who may be compelled to pay it."

This is the same as Sec. 66, Uniform Negotiable Instruments Law. But the indorser's liability created by that section, by the terms thereof, is to those who are holders in due course. 5 Uniform Laws Anno. Part. 2, Negotiable Instruments, p. 315. Whether plaintiff bank is a holder in due course of the draft here involved is the crucial inquiry on this theory of liability.

■ SDC 46.0402 enumerates what is required to constitute one a holder in due course. The basic requirement is that he be the holder of an instrument. According to SDC 46.0102 the term instrument as used in our negotiable instruments law is limited to mean a negotiable instrument. In other words, a holder may not attain the status of a holder in due course unless the instrument involved is one that is negotiable. Barnes v. Rowles, 84 Mont. 393, 276 P. 15, 79 A.L.R. 717; 10 C.J.S. Bills and Notes § 12 and § 301; 8 Am.Jur., Bills & Notes, § 337.

■ In addition to other requirements, an instrument to be negotiable "Must contain an unconditional promise or order to pay a sum certain in money; * * *". SDC 46.0106 (2). The promise or order to pay money contained in the draft in question is clearly not unconditional. The payment therein ordered is subject to approval of title. Consequently it is not a negotiable instrument. Coleman v. Valentin, 39 S.D. 323, 164 N.W. 67. Accordingly the defendants by writing their names on the back of this draft did not assume the liability imposed by SDC 46.0507. Hayter v. Dinsmore, 125 Kan. 749, 265 P. 1112; Barnes v. Rowles, supra; Beutel's Brannon Negotiable Instruments Law, 7th Ed., 956. Had this draft been negotiable the payment thereof by the drawee would have discharged it and no action could be maintained thereon. It would then be only evidence of a past transaction. SDC 46.0801(1); Johnson v. First State Bank, 144 Minn. 363, 175 N.W. 612, 9 A.L.R. 960.

■ That different incidents flow from the indorsement of a nonnegotiable instrument than grow out of the

indorsement of one that is negotiable is made clear by SDC 33.0404 and SDC Supp. 51.0803. The latter section so far as material in this connection is as follows:

"A nonnegotiable written contract for the payment of money or personal property may be transferred by indorsement in like manner with negotiable instruments. Such indorsement shall transfer all the rights of the assignor under the instrument to the assignee subject to all equities and defenses existing in favor of the maker at the time of the indorsement, or arising in his favor before notice of the assignment or indorsement."

The word indorsement is not in strictness applicable to such a transaction. Rather it is a technical word that has its origin in and is confined to the theory of negotiability. Bryant v. McGowan, 151 Pa.Super. 529, 30 A.2d 667. However, it is commonly used when one writes his name on the back of a nonnegotiable instrument. Such an indorser is no more than an assignor.

■ Our next inquiry is to consider whether the defendants may here be held liable as assignors of a nonnegotiable instrument. The law as to the liability of such assignors on implied warranties is in hopeless confusion. Annotation 79 A.L.R. 717; 37 Yale Law Journal 102; 5 Iowa Law Bulletin 65; 98 U. of Pa.L.Rev. 213; 4 Williston, Contracts, Rev.Ed., § 1162A; Joyce, Defenses to Commercial Paper, 2d Ed., Vol. 1, p. 78; 8 Am.Jur., Bills & Notes, § 556; 10 C.J.S. Bills and Notes § 30. However, a venture into that confusion is not necessary to a decision of this case.

At common law this liability of the assignor—whatever it is—was only to his immediate assignee. Young v. Garred, 90 W.Va. 767, 112 S.E. 181, 23 A.L.R. 1317. In this state we have no statute changing this common law rule. The defendants here assigned the draft to their bank in Huron. That institution is their immediate assignee. The plaintiff bank is a remote or sub-assignee. Restatement, Contracts, § 175(4) states the rule thus:

"An assignee's rights under his assignor's warranties are not assigned to a sub-assignee by

the mere assignment of the right against the obligor, to which the warranties relate, but the rights under such warranties may be expressly assigned."

No claim is made by the plaintiff that such rights were expressly assigned. See also 6 C.J.S. Assignments § 119; 4 Am.Jur., § 101. Under these circumstances the Butterfields, as assignors of a nonnegotiable instrument, are not liable to the plaintiff.

The trial court construed the complaint to also state a cause of action on the theory of money paid under a mistake. In its brief in this court the plaintiff bank states expressly that such cause of action was not pleaded and that the case was not tried on that theory by consent of the parties either express or implied. Consequently that theory is not before us. Daugherty v. McFarland, 40 S.D. 1, 166 N.W. 143. Plaintiff also complains of the action of the trial court in ruling on objections to evidence. We have examined these and are satisfied that if the court erred no prejudice resulted therefrom. The other propositions of law urged by the plaintiff are manifestly not pertinent to the issues presented in this action.

Affirmed.

ROBERTS, SMITH and BOGUE, JJ., concur.

HANSON, J., not sitting.