### FIRST NATIONAL BANK OF LINTON, etc.

v.

### OTTO HUBER AND SONS, INC., etc.

### No. CIV 74–3022.

United States District Court,
D. South Dakota.

June 10, 1975.

Charles D. Kell, Murdo, S. D., for plaintiff.

Eugene H. Jones, White River, S. D., for defendant.

## MEMORANDUM OPINION

BOGUE, District Judge.

This is an action on a promissory note which was tried to the Court on October 16, 1974, in Pierre, South Dakota. The plaintiff, First National Bank of Linton, is a banking corporation incorporated under the laws of North Dakota, with its principal place of business in the state of North Dakota, and brought this action against Otto Huber and Sons, Inc., a corporation incorporated under the laws of South Dakota, with its principal place of business in the state of South Dakota, to recover the amount allegedly owed them on a promissory note of the defendant. The jurisdiction of this Court is based upon diversity of citizenship and the requisite jurisdictional amount. 28 U.S.C. § 1332(a).

### I.

On June 20, 1973, Donald W. Huber, President of Otto Huber and Sons, Inc., entered into an agreement with Ejidi Goetz for the sale of Mr. Goetz' share in a hull-less barley crop that was being grown on certain farms in the south central portion of South Dakota. The basic terms of the agreement were that Goetz would sell one-half interest in his third share of the barley crop to the Otto Huber and Sons, Inc. for $16,200.00 (Plaintiff's Exhibit 3). Upon entering into the agreement a check for $1,200.-00, (Plaintiff's Exhibit 12) was issued to the order of Ejidi Goetz and signed by Virgil M. Huber, Secretary-Treasurer of the corporation, and Donald W. Huber, President of the corporation. On this same date of June 20, 1973, a promissory note (Plaintiff's Exhibit 1) was made to the order of Ejidi Goetz for the amount of $15,000.00, payable at the First National Bank of Linton, North Dakota, with stated interest at 9% per annum and signed by Donald W. Huber, President of Otto Huber and Son, Inc. Shortly after this date Mr. Goetz returned to the North Dakota area and made contact with the First National Bank of Linton with whom he had prior dealings. Mr. Goetz met with Keith Miller, Vice-President and Cashier of the First National Bank of Linton, and discussed the possibility of selling the note to the bank. Pursuant to this discussion, Mr. Miller on behalf of the bank, drafted a letter to the Farmers State Bank of Kilgore, Nebraska, requesting financial information on Otto Huber and Sons, Inc. A few days later Mr. Miller received a call from an officer of the Kilgore bank who advised him that the defendant corporation was financially sound. Mr. Miller, on July 6, 1973, made a call to Donald Huber and asked him if the note (Plaintiff's Exhibit 1) had been executed by the corporation to the order of Mr. Goetz and whether the agreement (Plaintiff's Exhibit 3) was the full and complete terms of the dealings between Otto Huber and Sons, Inc. and Mr. Goetz. Mr. Miller further inquired whether the terms of the agreement (Plaintiff's Exhibit 3) had been, at least up to that point in time, performed by Mr. Goetz. At this point it is necessary to note that the testimony of Mr. Miller and that of Donald Huber are in conflict as to the substance

of the conversation. The conflict of the testimony, and its significance, will be discussed in a later portion of this Memorandum Opinion.

On July 20, 1973, the First National Bank of Linton purchased the Huber note from Mr. Goetz. In return for the note the bank deposited $11,600.00 in Mr. Goetz' personal checking account, liquidated a note which Mr. Goetz owed the First National Bank of Linton, and deposited $1,282.53 in Mr. Goetz' escrow account (Plaintiff's Exhibit 8). On July 20, 1973, Mr. Miller, on behalf of the plaintiff, sent a Notice of Purchase and Ownership (Plaintiff's Exhibit 2) by first-class United States mail to Otto Huber and Sons, Inc., Parmalee, South Dakota. Mr. Donald Huber, however, denies receiving this Notice of Purchase and Ownership from the plaintiff.

On November 15, 1973, Mr. Miller, on behalf of the plaintiff, sent a letter to the defendant corporation advising them to remit the full amount of note and accrued interest; the letter further stated that the note was almost sixty days delinquent and that the bank did not intend to extend the note. The defendant corporation did not pay the note at that time, nor has it paid the note up to the present date. These basic facts set the stage for a discussion of the legal arguments concerning the liability of the defendant for this promissory note. Further facts may be referred to in the discussion of the legal issues for the sake of clarity.

## II.

In 1966 the State of South Dakota adopted the Uniform Commercial Code into law. Section 3–302(1) of the Uniform Commercial Code is embodied in the South Dakota Compiled Laws at § 57–12–2, which states that: "A holder in due course is a holder who takes the instrument (1) For value; and (2) In good faith; and (3) Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." The effect, of course, of achieving holder in due course status is that the holder takes the instrument free from all claims to it on the part of any person, except in certain specific circumstances which are not relevant here. The effect of failing to attain holder in due course status is enumerated in S.D.C.L. § 57–12–18, which states: "Unless he has the rights of a holder in due course any person takes the instrument subject to (1) All valid claims to it on the part of any person; and (2) All defenses of any party which would be available in an action on a simple contract; and (3) The defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose (§ 57–13–17); and (4) The defense that he or a person through whom he holds the instrument acquired it by theft, or that payment or satisfaction to such holder would be inconsistent with the terms of a restrictive endorsement. The claim of any third person to the instrument is not otherwise available as a defense to any party liable thereon unless the third person himself defends the action for such party." Thus, in the present case, if the plaintiff is a holder in due course the various defenses raised by the defendant, the maker of the note, cannot be asserted and the plaintiff would have a right to judgment on the note, on the other hand, if the plaintiff is not a holder in due course, the defendant would have the right to assert all defenses that may flow from the underlying contract, against the plaintiff in this action.

The defendant in this case argues that the plaintiff was not a holder in due course in that the plaintiff took the instrument with notice of a defense or claim against it on the part of the defendant. This defense relates to a telephone conversation, referred to previously, between Mr. Miller on behalf of the First National Bank of Linton and Mr. Otto Huber on the 6th day of July, 1973. As previously stated, Mr. Miller made this telephone conversation to determine whether or not the First National Bank of Linton should purchase the note executed by the defendant. Mr. Miller testi-

fied that he asked Mr. Huber whether he in fact executed that note, and whether or not Mr. Goetz had completed the terms of the underlying agreement. Mr. Huber testified that during this conversation he related to Mr. Miller that the terms and conditions of the agreement had not been completed by Mr. Goetz and that the note was to be paid off by Goetz when the barley matured, or in other words, Goetz could withhold that amount of money from the proceeds of the sale of the harvested barley, and further that Goetz was to pick up the harvested barley from the various farmers as specified in the agreement. Mr. Miller testified that none of the prior facts stated were contained within the telephone conversation, and that Mr. Huber told him that the terms of the agreement had been or were being fulfilled by Mr. Goetz and that the written agreement contained all the terms and conditions of how the transaction was to be completed. Thus, the Court is faced with diametrically opposed testimony from each of the respective sides of this litigation. Upon reviewing the evidence and demeanor of the witnesses it is the conclusion of this Court that Mr. Huber in the telephone conversation on July 6, 1973, fully explained to Mr. Miller that the note was to be paid out by Mr. Goetz from the proceeds of the barley after it matured, was harvested and was collected by Mr. Goetz, and as of the date of the conversation, Mr. Goetz had not completed the terms of the agreement.

■ The legal consequences of this finding of fact are that on July 6, 1973, the First National Bank of Linton, through its agent Mr. Miller, had notice within the meaning of S.D.C.L. § 57–12–2. This conclusion results from the fact that Mr. Miller was apprised of the fact that the contract agreement had been breached by Mr. Goetz, or at least that there was a serious question as to the performance of the contract, plus the fact that Mr. Miller was on notice that the parties did not intend for the note to

be "negotiable". Mr. Huber stated that Mr. Goetz was to pick up the barley, and withhold the amount of the note plus interest from the proceeds of the sale of the barley. This fact in and of itself would make the note non-negotiable.

■ Although the Court has determined that the First National Bank of Linton was not a holder in due course when it purchased the note from Mr. Goetz, it would seem appropriate here to discuss a further irregularity in the negotiation of this note. South Dakota Compiled Laws § 57–12–9 states: "The purchaser has notice of a claim or defense if the instrument is so incomplete, bears such visible evidence of forgery or alteration, or is otherwise so irregular as to call into question its validity, terms or ownership or to create an ambiguity as to the party to pay." This section of the South Dakota Compiled Laws, which is Section 3–304(1)(a) of the Uniform Commercial Code, deals with when a purchaser has notice of a possible defect in an instrument, which notice will deprive the party of holder in due course status. The note in question here (Plaintiff's Exhibit No. 1) is, to say the least, irregular on its face. The blank intended for the statement for the amount of time after date on which the note is payable, is blank. The blank in which an individual may insert the word "I", or multiple makers would insert the word "we", followed by "Promised to pay to the order of" has the date of 9–20–73 inserted in it, and at the bottom of the note after the printed word "due" followed by a blank line which has written on it "Sept. 20" without any indication as to the year in which it is due. A reasonably prudent person exercising normal commercial standards would immediately be put on notice that there was something very irregular about the terms of the note. A properly executed note would have stated in the first blank, "90 days after date, I promise to pay to the order of," and the blank at the bottom of the note showing the due date would have stated, "Sept. 20, 1973."

The note as it presently reads could have at least two interpretations as to the due date of the note, and also the year in which it is due. Thus, although the Court has previously determined that the First National Bank of Linton was not a holder in due course, because of its notice of a breach of the conditions of the original agreement, it is appropriate to add that the First National Bank of Linton would not have been able to achieve holder in due course status in any event since it was on notice of the apparent irregularity on the face of the instrument.

Since the plaintiffs did not achieve the rights of a holder in due course, it is subject to all valid defenses asserted by the original maker of the note. The plaintiff being unable to overcome the defenses urged by the defendant, this Court has no alternative but to dismiss the plaintiffs' complaint.

The foregoing Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. The prevailing party shall prepare the necessary judgment to effect the foregoing decision by the Court.