**WESTERN BANK, Sioux Falls, South Dakota, Plaintiff and Appellee,**

v.

**RaDEC CONSTRUCTION COMPANY, INC., Defendant and Appellant.**

**No. 14858.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 20, 1985.

Decided Feb. 12, 1986.

Robert E. Hayes, Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiff and appellee.

James T. Goetz, Goetz, Hirsch & Klimisch, Yankton, for defendant and appellant.

HERTZ, Acting Justice.

This civil appeal arises from a directed verdict in favor of Western Bank ("Bank"), from which RaDEC Construction Company, Inc. ("RaDEC"), was ordered to pay the sum of $11,718.71 to Bank plus costs and disbursements associated with this action. We affirm.

## Statement of Facts

Located in Hartington, Nebraska, RaDEC is a general contractor engaged in the construction of commercial buildings. At all times pertinent to this action, RaDEC was involved in the construction of a medical center in Huron, South Dakota. One of RaDEC's sub-contractors on this job was Jerry Ball ("Ball"), d/b/a Contractor's Carpet Center ("Carpet Center").

RaDEC became aware of the fact that Carpet Center was having difficulty furnishing the necessary materials and labor required to complete the job at the medical center. This was apparently due to Carpet Center's financial problems. Thereafter, RaDEC's president, Clarence Hoesing ("Hoesing"), had a telephone conversation with Carpet Center on December 13, 1982, in which Hoesing agreed to forward a check for $8,743.52 to Ball provided, however, that Ball (1) furnish certain paid invoices for material delivered, (2) provide necessary additional material, and (3) perform certain assurances pertaining to the installation of the material on December 14, 1982.

Hoesing then proceeded to make out a handwritten check to Carpet Center. In the lower lefthand corner of the check, (in the spot which generally indicates "memo"), Hoesing typed the phrase, "Payee must prove clear title to material." At trial, Hoesing testified that he considered the check to be "conditioned" upon Carpet Center's performance of the three foregoing requirements which Ball agreed to in their telephone conversation. Hoesing further testified that he had employed this practice (e.g. writing "conditional checks") three or four times a year for many years under similar circumstances.

The check was delivered to Carpet Center, in Huron, on December 14, 1982. Ball deposited the check with Bank on the same day. Bank handled the deposit as a "cash" item and thereby permitted Carpet Center to take immediate withdrawal.

Also, on December 14, 1982, RaDEC learned that Carpet Center had not performed the three requirements pursuant to their discussion the day before. As such, RaDEC stopped payment on the check. However, RaDEC was unaware of what financial institution Carpet Center would use, thus, Bank learned of the stopped payment on December 30, 1982, through normal banking channels. Thereafter, Bank attempted to recover the amount of the check from Carpet Center but was prevented from doing so by Carpet Center's insolvency. Consequently, Bank brought suit against RaDEC claiming that Bank was a holder in due course.

At trial, Bank stated that it had the option of handling the check as a "cash" or "collection" item. Bank also stated that the check in question was a "typical cash item" which required no special handling. In reference to the fact that Carpet Center's account with Bank was overdrawn by $36 at the time relevant to this action, Bank stated that, "very little attention was paid to that $36 overdraft. For a commercial account to be overdrawn $36 is rather a minor sum, very little attention would have been paid to that."

By contrast, RaDEC argues that its check was conditional in nature; that Bank should have been put on notice by the phrase "payee must prove clear title to material" which appeared on the face of the check, and thereafter, treated the check as a "collection item." Finally, RaDEC contends that Bank could not be a holder in due course because RaDEC's check did not contain an unconditional promise to pay, and therefore, Bank took it with notice of RaDEC's possible defense.

The issues raised by this appeal will be hereafter separately stated under appropriate headings.

## I

### WHETHER THE CHECK IN QUESTION CONTAINED AN UNCONDITIONAL PROMISE TO PAY?

 The trial court directed a verdict for the Bank at the close of all the evidence, holding as a matter of law, that the phrase typed in at the lower left corner of the check, "payee must prove clear title to material," did not have the effect of making the check conditional, and that Bank was a bona fide holder in due course. This was a law question properly addressed by the trial court. Although determination of whether notice has been given is a question of fact for the jury, construction or sufficiency of the notice is for the court. *Great Central Insurance Co. v. Bowery Savings Bank,* 142 Ga.App. 630, 236 S.E.2d 772 (1977).

SDCL 57A–3–104(1) sets forth four elements necessary to constitute a writing as a negotiable instrument. (a) It must be signed by the maker; (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this chapter; (c) be payable on demand or at a definite time; and (d) be payable to order or to bearer.

In this case, there is no dispute that elements (a), (c) and (d) have been fulfilled. RaDEC claims, however, that element (b) has not been met because the check was a "conditional instrument" and therefore subject to his defenses.

 RaDEC relies heavily on our decision in *Bank of America v. Butterfield,* 77 S.D. 170, 88 N.W.2d 909 (1958). In that case, the draft in question stated: "Subject to approval of title, pay to the order of Vernon H. Butterfield and Laura E. Butterfield." It is important to note that the phrase "subject to approval of title" immediately precedes the standard phrase, "Pay to the order of." The Bank of America, nevertheless, claimed it was a holder in due course and that the Butterfields should be held liable for the amount of the draft. In affirming the trial court we said:

In addition to other requirements, an instrument to be negotiable 'must contain an unconditional promise or order to pay a sum certain in money.' The promise or order to pay money contained in the draft in question is clearly not unconditional. The payment therein ordered is subject to approval of title. Consequently, it is not a negotiable instrument.

Negotiability is determined from the face, the four corners, of the instrument without reference to extrinsic facts. The conditional or unconditional character of the promise or order is to be determined by what is expressed in the instrument itself. *Holsonback v. First State Bank, etc.,* 394 So.2d 381 (Ala.Civ.App.1980).

RaDEC claims that the check was not a negotiable instrument because of the condition written on its face. Moreover, RaDEC argues that the location of the conditional language in the place usually reserved for "memo" is of little consequence, since the language itself was sufficient to give Bank notice that RaDEC's obligation to pay was conditioned upon Carpet Center's having proved clear title to the material.

The Bank, on the other hand, argues that the instant factual situation can be distinguished from that of *Bank of America, supra,* because in that case the conditional language, i.e., "subject to approval of title," preceded the words "Pay to the Order of" the Butterfields. Further, a witness for the Bank testified that RaDEC's "conditional" phrase was located at the place reserved for "memos" by the maker or drawer of the check, and as such were not calculated to draw the specific attention of the Bank's personnel in the ordinary day to day processing of checks.

 We conclude that the phrase "payee must prove clear title to material" written where it was, did not make the check "conditional" thereby depriving Bank of its status as a holder in due course. It appears that the notation in the "memo" area of the check is nothing more than a self-serving declaration by RaDEC

for its own benefit and record keeping and for informational purposes only. An otherwise unconditional negotiable instrument cannot be rendered conditional by such a device.

What was written by the Minnesota Supreme Court in *Eldon's Super Fresh Stores, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 296 Minn. 130, 207 N.W.2d 282 (Minn.1973), is pertinent here:

Courts are often confronted with the obligation of applying rules to determine which of two relatively innocent persons must suffer a loss due to misconduct of a third person. The instant case is such a situation. The Minnesota cases dealing with situations such as the one at bar have indicated that the loss must fall on the drawer rather than upon the payee (or other holder) because it was the drawer who created the situation and opportunity for defalcation by its agents.

II

## WHETHER BANK TOOK THE CHECK WITHOUT NOTICE OF A CLAIM OR DEFENSE?

In order for the holder of an instrument to attain the status of a holder in due course, he must take the instrument for value, in good faith, without notice that it is overdue or has been dishonored or of any defense against or claim to the instrument on the part of any person, and the instrument must be something other than consumer paper. SDCL 57A-3-302.

As we have already noted, there is no issue concerning whether the Bank took the check for value and in good faith, and it is also clear that the check was not consumer paper. Therefore, it appears the real issue before this court is whether the inscription on the check was such as to put the Bank on notice of a defense against enforcement of the instrument.

■ A person has notice of a fact when he has actual knowledge of it, has received a notice or notification of it, or from all the facts and circumstances known to him at the time in question he has reason to know that it exists. SDCL 57A-1-201(25).

■ RaDEC suggests that the Bank had a duty of investigation as a result of its notation on the check. No such duty is imposed by statute or our case law. As the Minnesota Supreme Court noted in *Eldon's Super Fresh Stores, Inc., supra:*

Notice ... is restricted to actual knowledge of the fact, receipt of notification of it, or knowledge of facts from which the fact in question is inferable and they all exclude the situation in which a person does not have actual or inferable knowledge but merely could discover the fact by reasonable investigation.

It appears that SDCL 57A-3-304(4)(b) is applicable to the instant fact situation:

Knowledge of the following facts does not of itself give the purchaser notice of a defense or claim ...

(b) that it was issued or negotiated in return for an executory promise or accompanied by a separate agreement, unless the purchaser has notice that a defense or claim has arisen from the terms thereof.

In *First National Bank of Linton v. Otto Huber & Sons, Inc.*, 394 F.Supp. 1284 (D.S.D.1975), in applying Section 3-304 the court stated that a person has notice of a claim or defense if "a reasonably prudent person exercising normal commercial standards would immediately be put on notice that there was something very irregular about the terms of the note." We believe that the check in this case was not, under normal commercial standards, so "very irregular" as to put a person on notice that a defense to the instrument existed.

■ More importantly, the record is absolutely devoid of any evidence tending to establish that Bank had notice or knowledge that the agreement between Carpet Center and RaDEC had not been fully performed. It is not sufficient to constitute notice of a defense that the instrument simply make reference to an executory agreement. It must further be shown that the Bank had, at the time it took the instru-

ment, inferable knowledge that a defense or claim had arisen under the terms of the executory agreement. 11 Am.Jur.2d, *Bills and Notes* § 460.

In *City of Deerfield Beach v. Florida National Bank of Palm Beach County*, 35 U.C.C.Rep. 1218, 428 So.2d 779 (Fla.Ct.App. 1983) is found the following pertinent statement:

> We see no reason to require banks to scrutinize any check for payor language intended to operate as an accord and satisfaction, compromise or release and then monitor any changes made by the payee in avoidance. Appellant would require banks to determine contractual relationships between payor and payee which are totally outside the contract of the check itself. Such a requirement would be destructive and an unjustified impediment to the flow of commerce.

■ RaDEC urges that when a bank officer testified that the check "could" be conditional, that this is sufficient to make the check conditional in law. At most this is a mere legal conclusion by a lay person, which is not binding on this court.

■ It is undisputed that Carpet Center was overdrawn by some $36 at the time the check was presented to Bank. RaDEC contends this should have put Bank on notice that Carpet Center was near insolvency. The relevancy of this contention is questionable. There is nothing in Carpet Center's apparent financial problem to give the Bank any reason to believe that RaDEC would not perform its contract as evidenced by the check in question. The fact that immediate credit was given to Carpet Center for the check in question cannot be considered as notice of defense or even lack of good faith. Various jurisdictions have remained unimpressed by the claim that an existing overdraft in an account gives a bank notice of a possible defense to enforcement of an instrument. *Frantz v. First National Bank of Anchorage*, 25 U.C.C.Rep. 240, 584 P.2d 1125 (Alaska 1978); *Bowling Green Inc. v. State Street Bank and Trust Company*, 425 F.2d 81 (1st Cir.1970); *St. Paul Fire & Marine Insurance Company v. State Bank of Salem*, 412 N.E.2d 103 (Ind.Ct.App.1980).

Accordingly, the judgment of the trial court is affirmed.

FOSHEIM, C.J., and MORGAN and WUEST, JJ., concur.

HENDERSON, J., specially concurs.

HENDERSON, Justice (specially concurring).

Although the inscription on the check does not, under these circumstances, via the majority opinion, defeat the Bank's holder in due course status, certainly—as between the Carpet Center and RaDEC—the "memo" is of great significance. Most people in the business world pay by check. A denomination on the check can create an account stated, compromise, accord and satisfaction, or payment in full status. As between the Carpet Center and RaDEC, this is simply not a self-serving declaration or for recordkeeping or for informational purposes. It is a common practice to use a check for a transfer of funds and the payment of bills. Most families do so and banks widely advertise that checks are excellent receipts and proof of payment. I am not trying to impugn the language of the majority opinion but wish to restrict my vote so that I am not, in futuro, married to any language which would preclude me from recognizing binding commercial practices which transpire by the thousands in banks, each day, all over the nation. Nor do I wish to estop businesses or individuals from asserting the validity of memos on their checks.

It is fully appreciated by this author that the wheels of commerce could grind to a quick halt if a bank had the onerous burden of "looking behind" the circulation of all commercial paper and the negotiation of each check. Banks cannot be investigators or mini-tribunals. Holders in due course of a negotiable instrument were historically developed for the avowed purpose of promoting commercial transactions. *See generally, Western State Bank of South Bend, Indiana v. First Union Bank &*

*Trust Co. of Winamac, Indiana,* 172 Ind. App. 321, 360 N.E.2d 254 (1977); and *Bowling Green, Inc. v. State Street Bank & Trust Co.,* 425 F.2d 81 (1st Cir.1970). However, there are notes and checks bearing conditional characteristics which can destroy negotiability. This is built into the Uniform Commercial Code. *See* SDCL 57A–3–104(1)(b); *Booker v. Everhart,* 294 N.C. 146, 240 S.E.2d 360 (1978) (suit on installment note; terms incorporated by reference). In *Booker,* the North Carolina Supreme Court held that this particular note was not a negotiable note, making reference to the substantive provision which I have just cited.

> [T]he conditional or unconditional character of the promise or order is to be determined by what is expressed in the instrument itself. When the instrument itself makes express reference to an outside agreement, transaction or document, the effect on the negotiability of the instrument will depend on the nature of the reference.

*Booker,* 294 N.C. at 151, 240 S.E.2d at 363. The present case is very difficult for me. Appellate decisions are not always set in jurisprudential cement. We are not visited with simple cases in the Supreme Court very often. Appellate justice is many-sided and multifaceted. All, in academic pursuit, is not black and white. When areas of gray surface, gnawing doubt sets in, and it is nettlesome to a would-be scholar. The case at bar is, perhaps, closer than the majority opinion suggests. Competing values are delicately balanced; we have the "wheels of commerce must go" concept equated against the fact that this particular check contained language which might arouse a great circumspection by the Bank. It is doubtful that the inscription is "highly irregular," a plateau of certitude which was required by Federal District Judge Bogue in *First Nat'l Bank of Linton,* 394 F.Supp. 1284. In *Bank of America,* 88 N.W.2d 909, we had the words "Subject to Approval of Title" immediately preceding the words "Pay to the Order of"; here, we have "Payee must prove clear title to material." Both involve "title." Both have reference to an outside matter. One ponders as to the distinction of these two phrases. The language appears stronger in *Bank of America* to set up a condition; in *Bank of America,* as the majority opinion points out, it is very significant that the phrase immediately preceded "Pay to the Order of." Divergent authority to the majority's stance is found at 10 Am.Jur.2d *Banks* § 554, at 527 (1963).

> Where a check is presented for payment *bearing a condition upon its face,* it is the duty of the bank before paying it to make inquiry of the drawer to ascertain whether or not the condition has been performed; payment without such inquiry is at the peril of the bank, so that it will not be protected in charging the payment to the account of the drawer where the condition has not been performed. If the condition has in fact been performed, the absence of inquiry by the bank as to performance does not prejudice it, but in any event, a bank must be circumspect when a conditional check is presented for payment, *since the condition renders the instrument nonnegotiable,* thereby precluding the presumption of delivery to a holder in due course which prevails as to negotiable paper. (Emphasis supplied mine.)

This American Jurisprudence citation begs, of course, the legal conclusion that the check is a conditional check. And this Court's holding is, of course, that the check at bar is not conditional. It is academically irksome to further note that the Bank admits that it had a choice of either handling the check as a cash item or as a collection item but independently chose, of its own volition, to handle it as a cash item. Another layer of exasperation on academic certainty is tiered when one reads in the transcript that a Bank officer testified that the language could be construed as being conditional and that the language could be construed as a condition.

Thus, I concur specially to elaborate on my vote and, hopefully, to save the integrity of that little note, often written in the lower left-hand corner of a check, which

affixes a legal relationship between the parties when the check is tendered and cashed. To an umpire, sometimes it's a strike and sometimes it's a ball. Sometimes it just shaves the plate. You call 'em, as "you see's 'em." This is a plate shaver for me. Although Professor Rosenberg, in *Judicial Discretion of the Trial Court, Viewed from Above,* 22 Syracuse L.Rev. 635, 640 (1971), was referring to the review of the executed discretionary powers of a trial judge, there are appellate umpires, also. He observed:

An episode of that kind gives special point to the well-known fable that has three baseball umpires arguing about how they distinguish balls from strikes during the game. The first one says: "It's simple. I call 'em as I see 'em." The second one snorts: "Huh! I call 'em as they are!" And the third one ends the debate with: "They ain't nothin' 'til I call 'em!"